## Donohue *versus* McNichol.

| 61 | 73 |
| 160 | 22 |
| 61 | 73 |
| 198 | 257 |

1. A testatrix gave to her executor "all my estate, real, personal and mixed," in trust, "out of my personal estate and the income of my real estate to pay to my son such sum as my said executor may deem proper, always allowing my said son sufficient to support him respectably, and if my said son becomes sober, &c., it is my will that he should receive the rents, &c., of the real estate during life." The son died without becoming sober, &c. *Held*, that by the first clause the son took no estate in the real estate given to the executor, but in the next clause a conditional life estate was given him in the rents, &c., but as the condition was not performed he took only a legacy sufficient for his support.

2. She further directed on her son's death leaving "lawful issue," that the executor should "pay such issue the income of my said real estate and such part of my personal estate as my executor may deem proper, and after the death of such issue of my son, in trust for my lawful heirs and assigns for ever;" and that none of her real estate should be sold or mortgaged during the life of her son "or his lawful issue." *Held*, that this clause gave an estate for life by implication to the issue.

3. She further directed that on the death of such lawful issue of her son, the executor should convey to her heirs all her real and personal estate, and in case of the son's death without lawful issue, the executor was to hold all her estate for "my lawful heirs, their heirs and assigns for ever * * and to give up and convey all my real and personal estate unto my lawful heirs, their heirs and assigns for ever." At the death of the testatrix her son was her sole heir: he afterwards married, and died intestate without having had issue, leaving a widow. At his death the mother's nephews and nieces were her heirs. *Held*, that the son took the estate as heir at law by descent.

4. If the event upon which an estate is limited may by possibility not occur within a life in being or twenty-one years afterwards it is too remote.

5. In applying the rule against perpetuities it is an invariable principle that regard is to be had to possible not actual events, and the fact that the limitation might have included objects too remote is fatal.

February 12th 1869. Before THOMPSON, C. J., AGNEW and WILLIAMS, JJ. READ, J., at Nisi Prius. SHARSWOOD, J., absent.

Appeal from the decree of the Supreme Court at Nisi Prius: In Equity: No. 39, to January Term 1869.

Mary Donohue filed her bill in December 1868 against Patrick McNichol, setting out—1. That Mary Donohue, widow of Edward Donohue, died about March 1864, seised in fee of certain real estate (describing it) in Philadelphia, having made her will (a copy of which was annexed to the bill), dated March 3d 1864, and duly proved after her death.

2. That John Donohue, son of the testatrix, and named in the will, married the plaintiff, August 26th 1865, and died about January 1868 intestate, without having had any issue.

3. That the testatrix left surviving her at her death eight children, now living, of her deceased brother James, and two children, now living, of her deceased brother Hugh.

4. That the defendant has possession of title-papers belonging to said real estate, and refuses to exhibit the same to the plaintiff,

[Donohue *v.* McNichol.]

so that she cannot more fully describe said real estate, refuses to convey to her for life one-half or any part of the real estate, and denies her right thereto.

5. That the defendant has received income from said real estate accruing since the death of John Donohue, and refuses to account or pay over to the plaintiff any part thereof. She prayed for a discovery; that defendant be decreed to exhibit the title-papers to the plaintiff, convey her one-half part of the real estate for life, account for and pay over to her one-half the income accrued since John Donohue's death; for further relief, &c.

The will was as follows:—

* * " Item: It is my will, and I do hereby give, devise and bequeath unto my executor, hereinafter named, all my estate, real, personal and mixed, to have and to hold the same in trust for the following uses and purposes, to wit: Out of my personal estate and the net income of my real estate to pay and give to my son John such sum or sums of money as my said executor may deem proper, always allowing, however, my said son John a sufficient sum to support him respectably; and if my said son John becomes a sober, industrious man, it is my will and desire that he should receive the rents, issues and profits of all my real estate during his natural life, and upon the death of my said son John leaving lawful issue, upon the further trust, to pay to such issue the net income of my said real estate, and such part of my personal estate as my said executor may deem proper, and after the death of such lawful issue of my said son John, then in trust for the use, benefit and behoof of my lawful heirs and assigns for ever.

" And my said executor after the death of such lawful issue of my said son John, is to give up and convey over unto my said lawful heirs all my real and personal estate, and in the event of the death of my said son John without lawful issue, that my said executor is to hold my said real and personal estate (if any) for the use, benefit and behoof of my lawful heirs, their heirs and assigns for ever.

"And upon the death of my said son John, as aforesaid, without lawful issue, my said executor is to give up and convey all my real and personal estate unto my said lawful heirs, their heirs and assigns for ever.

" It is further my will, and I desire to have it expressly understood, that none of my real estate is to be sold or mortgaged during the life of my said son John or his lawful issue. And lastly, I do appoint my friend Patrick McNichol the executor of this my last will and testament."

The defendant filed a demurrer to the whole bill, setting forth as cause of demurrer, that " the plaintiff has shown therein no right or title to the real estate, title-papers and income therein

[Donohue v. McNichol.]

demanded;" and by agreement a *pro forma* decree was entered that the said demurrer be allowed, and plaintiff's bill be dismissed.

On appeal to the Supreme Court this decree was assigned for error.

*G. L. Crawford* (with whom was *B. H. Brewster*, Attorney-General), for appellant.—The law favors an absolute rather than a defeasible estate: Smith's Appeal, 11 Harris 9; Manderson v. Lukens, Id. 31; Rewalt v. Ulrich, Id. 388; a fee simple before all other estates: Act April 8th 1833, § 9, Pamph. L. 249, Purd. 1017, pl. 10; an estate tail, because readily barred: Vaughan v. Dickes, 8 Harris 509, and especially since Act of 1855, making it a fee simple—a primary to the sacrifice of a secondary intent; the first taker is the primary object of the testator's bounty, and preferred to issue not in being the secondary object of his bounty: Paxson v. Lefferts, 3 Rawle 59; Wilson v. McKeehan, 3 P. F. Smith 79; the law favors the absolute vesting of an estate at the earliest moment, and making it available to the primary object of the testator's bounty, with the right of alienation, and subject to the rights of creditors: Steacy v. Rice, 3 Casey 75; a distribution as nearly conformed to the general rule of inheritance as possible: Lipman's Appeal, 6 Casey 180. The English rule construing a devise in favor of the heir operates here, Estate of Mary Biddle, 4 Casey 59; Hitchcock v. Hitchcock, 11 Id. 393, with more force because all the heirs take, Walker v. Walker, Id. 40; McIntyre v. Ramsey, 11 Harris 320, and legal words are to be taken in their legal meaning: Clark v. Baker, 3 S. & R. 481; Criley v. Chamberlain, 6 Casey 161.

A testatrix cannot exclude her heir or distributee in intestacy by mere words of exclusion, without disposing of the subject to some other person: Smith, Real and Pers. Prop. 799*. The gift of the "net income," "rents, issues and profits" for life is equivalent to a limitation of the freehold for life: Coke Lit. 4 b.; Carlyle v. Cannon, 3 Rawle 489; McCullough's Appeal, 2 Jones 197; Van Rensselaer v. Dunkin, 12 Harris 252.

Upon John's death the net income of the realty is given to his lawful issue without words of distribution, superadded limitation, &c., which gives John an estate tail: Smith, Real and Pers. Prop. 114*; Hawkins 189 to 196; Rancel v. Cresswell, 6 Casey 158; Potts's Appeal, Id. 168; Pierce v. Hakes, 11 Harris 231; Kay v. Scates, 1 Wright 31; Wynn v. Story, 2 Id. 166. Especially as there is a limitation over upon the death of John without lawful issue: Hawkins 200–205; Smith, Real and Pers. Prop. 116–117; Sharp v. Thompson, 1 Whart. 139; Wynn v. Story, 2 Wright 166; Haines v. Witmer, 2 Yeates 400; Caskey v. Brewer, 17 S. & R. 441; Lapsley v. Lapsley, 9 Barr 130; Hansell v. Hubbell, 12 Harris 244; Doyle v. Mullady, 9 Casey 264; Bra-

[Donohue *v.* McNichol.]

den *v.* Cannon, 1 Grant 60; Barnet *v.* Deiturk, 7 Wright 94; Heffner *v.* Knepper, 6 Watts 18; Haldeman *v.* Haldeman, 4 Wright 29; Irwin *v.* Dunwoody, 17 S. & R. 61; Shoemaker *v.* Huffnagle, 4 W. & S. 437; Eichelberger *v.* Barnitz, 9 Watts 447; Allen *v.* Henderson, 13 Wright 339; Powell *v.* Board of Domes. Miss., Id. 56; Matlack *v.* Roberts, 4 P. F. Smith 150.

It is a well-known maxim that an heir at law can be disinherited only by express devise or necessary implication, and an intention to the contrary cannot be supposed, 1 Jarman 465*, and the implication is made of an estate tail in a testator's heir from a limitation over upon failure of his issue, though there be no prior gift to the heir, Walter *v.* Drew, Comyn 373, and is not repelled by an express contingent devise to the heir: Daintry *v.* Daintry, 6 Term Rep. 307. The rule in Shelley's Case is a settled rule of property in Pennsylvania, frustrating the clearest intent of the testator against the operation of the rule that the first taker shall have only an estate for life: George *v.* Morgan, 4 Harris 95; Bender *v.* Fleurie, 2 Grant 345; Allen *v.* Markle, 12 Casey 117; Guthrie's Appeal, 1 Wright 10; Caskey *v.* Brewer, 17 S. & R. 441; Smith on Property 111, 115, 116; James's Claim, 1 Dallas 47; Carter *v.* McMichael, 10 S. & R. 429.

The disposition over to the testatrix's heirs and assigns being upon an indefinite failure of issue of John, is void for remoteness: 2 Redfield on Wills 593, 657.

By the Act of April 27th 1855, § 1, Pamph. L. 368, Purd. 422, pl. 7, estates tail are taken as estates in fee simple.

*P. Archer* (with whom was *L. C. Cassidy*), for appellee.—John took no estate in the land, but at most a bequest of such sums as the executor should see proper to give him to support him respectably. It lacked a quality of an annuity, certainty of amount: 1 Williams on Executors 721; 1 Jarm. on Wills 603, 612, 613. The testatrix intended to treat the gift as personalty, and her intention must be obeyed: 4 Kent's Com. 631; 2 Jarm. on Wills 522; McKeehan *v.* Wilson, 3 P. F. Smith 74. Where there is a contingent limitation over on a gift of interest or produce, the rule that the principal passes does not apply: Still *v.* Spear, 9 Wright 171. John was not *sui juris* as to this will, and a trust would be supported: Barnett's Appeal, 10 Wright 392. The trust prevented intestacy: Van Rensselaer *v.* Dunkin, 12 Harris 252; McClurken's Appeal, 12 Wright 211. John's becoming sober, &c., was a condition precedent: Lewisburg *v.* Augusta, 2 W. & S. 66. The trustee was the judge: Naglee's Estate, 2 P. F. Smith 154; 2 Wms. on Exrs. 1131; 4 Kent's Com. 100; Tattersall *v.* Howell, 2 Meriv. 26; Culin's Appeal, 8 Harris 243; Montgomery *v.* Petriken, 5 Casey 118; Smith on Exec. Int.,

[Donohue *v.* McNichol.]

§§ 148, 157, 170, 195 ; Mickey's Appeal, 10 Wright 341 ; Roper on Legacies 551.

The devise over being for a life or lives in being is not obnoxious to the rule against perpetuities : 1 Jarm. on Wills 261 ; Pownal *v.* Graham, 9 J. N. S. 318 ; Barnett's Appeal, *supra.* This was an active trust for John : Wickham *v.* Berry, 5 P. F. Smith 72 ; Lancaster *v.* Dolan, 1 Rawle 231 ; Pullen *v.* Rianhard, 1 Whart. 520 ; Thomas *v.* Folwell, 2 Id. 11 ; Dorrance *v.* Scott, 3 Id. 316 ; Lyne *v.* Crouse, 1 Barr 111 ; Rogers *v.* Smith, 4 Id. 93 ; Insurance Co. *v.* Foster, 11 Casey 134 ; Fisher *v.* Taylor, 2 Rawle 33 ; Holdship *v.* Patterson, 7 Watts 547 ; Ashhurst *v.* Given, 5 W. & S. 323 ; Perry *v.* Lowber, 13 Wright 483 ; Riehle's Appeal, 4 P. F. Smith 97 ; Vaux *v.* Parke, 7 W. & S. 19 ; Norris *v.* Johnston, 5 Barr 287 ; Eyrick *v.* Hetrick, 1 Harris 491 ; Brown *v.* Williamson, 12 Casey 338 ; Wilson's Estate, 2 Barr 325 ; Vanartsdalen *v.* Vanartsdalen, 2 Harris 384 ; Shankland's Appeal, 11 Wright 114 ; McBride *v.* Smyth, 4 P. F. Smith 245.

The opinion of the court was delivered, July 6th 1869, by

WILLIAMS, J.—Though the will in this case is inartificially drawn, there can be little or no doubt as to its meaning. The primary intent of the testatrix was to make suitable provision for her son John, and for this purpose she devised and bequeathed all her estate, real, personal and mixed, unto her executor in trust, and directed him out of her personal property and net income of her real estate, to pay her son such sum or sums of money as might be sufficient to support him respectably, and if he became a sober industrious man, she declared it to be her will and desire that he should receive the rents, issues and profits of all her real estate during his natural life.

It is clear, that under the clause making provision for his support, the son took no interest or estate whatever in the real and personal property devised and bequeathed to the executor ; and the amount he was to receive out of the personal property and net income of the real estate for his support was left to the discretion of the executor, subject to the restriction that it should be " a sum sufficient to support him respectably." In the succeeding clause a conditional life estate was given to him in the rents, issues and profits of the real estate, but as the condition upon which it was to vest was never performed, he took only a legacy sufficient for his support. The testatrix's next care was to provide for his lawful issue, if he should have any, and she directed the executor, upon his death leaving such issue, to pay them the net income of her real estate, and such part of her personal property as he might deem proper. Under this clause of the will an estate for life is given to the issue, not in express terms, but by necessary implica-

tion, from the limitation of the estate upon their death to her lawful heirs, and from the express prohibition of the mortgage or sale of her real estate during the life of her son or his lawful issue. The testatrix next provides, that after the death of her son's lawful issue, or in the event of his death without such issue, that all her real and personal estate shall be held in trust by her executor for her lawful heirs, their heirs and assigns for ever, to whom he is directed to give up and convey the same.

At the date of the will, and at the death of his mother, John was unmarried. After her death he married, and died without issue, leaving the appellant, his widow, surviving. At the death of his mother, John was her sole heir; and at his death her nephews and nieces, the children of her deceased brothers, were her heirs. Who, then, are entitled, under the limitation to the testatrix's lawful heirs, to the residue of the personal property, if any, and to the real estate of which she died seised? Did the testatrix intend that it should go to such person or persons as might be her heirs at her death, or to those who might be her heirs at the death of her son or his issue? If she intended it to go to the former, then it must go precisely as it would if she had died intestate as to the remainder or reversion, after the contingent life estate given to the issue of her son; and the limitation over to her lawful heirs is nothing more than a declaration that her property should go according to the Intestate Act, and if so, it went to her son John as her only heir. But if she intended that it should go to those who might be her heirs at the death of her son or his issue, then the limitation is void for remoteness.

If the event, upon which the estate is limited, may by possibility not occur within the term of a life in being and twenty-one years afterwards, it is too remote: Brattle Square Church *v.* Grant, 3 Gray 153. Here, the limitation, as was said in Sears *v.* Russell, 8 Gray 97, "is not upon a life in being with twenty-one years superadded, but upon a life in being, and after its termination, upon a life or lives not in being at the time of the testatrix's death, and which might continue fifty years or more after the expiration of the life of her son." The limitation is after the gift of a life estate to his unborn issue, and it is an invariable principle in applying the rule against perpetuities, that regard is to be had to possible, not actual events, and the fact that the limitation might have included objects too remote, is fatal to its validity, irrespectively of the event: 1 Jarman on Wills 233. It is not sufficient, that on the happening of certain events, the gift over may take effect, and if originally limited to those events would have been valid, but it must appear to be legal and valid in all the events, which at the time when the will takes effect, may by possibility occur: Sears *v.* Russell, 8 Gray 85. John's issue might have outlived him half a century, and the limitation, if

it applies to those who might be the testatrix's lawful heirs at their death, must undoubtedly be regarded as too remote. The case of Cooke *v.* Bowler, 15 Eng. Ch., 2 Keene 54, decides the very question raised here. There the testator bequeathed his property to his executors upon trust to convert the whole into money and invest the same in certain stock, the dividends of which, after paying thereout an annuity to his father during life, he gave to his brother George and three sisters for and during their lives, and after the decease of either of them, leaving any children, the share of him or them so dying to such children for their lives with benefit of survivorship; and in case his brother or either of his sisters should die without such issue, then the survivor or survivors to take the dividends, and after the decease of the survivor of the children of his brother and sisters, he directed the said stock, moneys and all interest then due and in arrear, to be distributed according to the Statute of Distributions. The testator died leaving his father his sole next of kin, his brother George and his three sisters mentioned in the will, surviving him. His father died within two or three years after his death. Two of his sisters died without issue, and one died leaving two children. His brother George survived the three sisters, and assigned his interest under the will to the plaintiff, who filed his bill against the executor upon the death of George, and the question in the cause was, what interest, in view of the events which had happened, George was entitled to under the will. And it was held, that he was entitled to a life interest in three-fourths of the capital, and that the capital was undisposed of and belonged to the next of kin of the testator living at his decease. The Master of the Rolls (Lord Langdale) said: "I am of opinion upon the construction of this will, that George Walker took a life interest in three-fourths, and that the *corpus* is undisposed of by the will. It is clear, that the survivor of the brother and sisters was to take the shares of such of them as died without leaving a child. It is equally clear, that a gift of the interest and dividends standing by itself would give the *corpus;* but the next following clause plainly indicates that he meant to give only an interest for life. After having given the dividends without express words of limitation, he proceeds to dispose of the capital in terms which fail for remoteness. The capital, therefore, is undisposed of, and goes to the next of kin of the testator living at his death." Mr. Jarman criticises this opinion, because of its real or apparent conflict with the rule that a remainder expectant on a gift for life to an unborn person is valid, provided it be made to take effect in favor of persons who are competent objects of gift. He says: "As a gift for life to an unborn person is valid, so, it is clear, is a remainder expectant on such gift, provided it be made to take effect in favor of persons who are competent objects of gift. Though here also a fallacy

prevails; for it is not uncommon to find it stated in unqualified terms, that though you may give a life interest to an unborn person, every ulterior gift is necessarily and absolutely void; and some countenance to this doctrine is to be found in the judgment as reported of an able living judge (see Cooke *v.* Bowler, 2 Keene 54), though the adjudication itself, rightly considered, lends no support to any such doctrine, as the ulterior gift, which was there pronounced to be void, was nothing more than a declaration that the property should go according to the Statute of Distributions, so that the claim of the next of kin, who was held to be entitled, was perfectly consistent with the will, unless indeed it applied to the next of kin at the death of the unborn legatee for life, which would have been clearly void as embracing persons who would not have been ascertainable until more than twenty-one years after a life in being; but for this construction there seems to have been no ground:" 1 Jarm. 240–1. The correctness of Mr. Jarmyn's rule, and the propriety of his criticism, it seems to me, admit of serious question. The limitation in Cooke *v.* Bowler was held void, not because it would, by possibility, embrace persons not ascertainable until more than twenty-one years after a life in being, but because it might not take effect within that period. Whether the particular persons of the class designated, and to which the estate is limited, are or are not ascertainable at the death of the testator, the limitation is too remote, if the event upon which the estate is limited, may, by possibility, not occur within the prescribed period. It is the possibility, however remote, that the event upon which the estate is limited may not occur within the prescribed period, and not the uncertainty of the persons who are to take, that renders the limitation void for remoteness: Dodd *v.* Wake, 8 Sim. 615; Newman *v.* Newman, 10 Id. 57. In laying down the rule in question, Mr. Jarman seems to have overlooked the principle which he had previously stated, and which he had declared to be invariable, that in applying the rule against perpetuities, regard is had to possible, not actual events. He cites no authority in support of the rule, and it is believed that none can be found, unless cases where the limitation is to the testator's heirs or next of kin, are supposed to come within it. But in such cases the estate is the same in nature and quality as that to which they would be entitled by descent, and the better opinion would therefore seem to be, that they take as heirs by descent, and not as purchasers under the limitation. But whether this is so or not, is immaterial, so far regards the result in this case. If the limitation was to the heirs of the testatrix at the death of her son's unborn issue, it was void for remoteness under Mr. Jarman's rule, as the persons to whom the estate was limited might not be ascertainable within the prescribed period; and it was clearly void, as we have seen, because the event upon which it was limited, might,

[Donohue *v.* McNichol.]

by possibility, not occur within such period. But if the limitation was to the heirs at her death, and if it was valid because they were then ascertainable and competent objects of gift, then the testatrix's son took the estate as a purchaser under the limitation. But if the limitation was too remote, which seems to us the better opinion, then he took the estate as heir at law by descent. It follows that the plaintiff is entitled to the discovery and relief which she seeks, and therefore the *pro forma* decree at Nisi Prius sustaining the demurrer and dismissing the bill must be reversed, and a decree entered overruling the demurrer and requiring the defendant to account and make discovery as prayed for in the bill.

Let the proper decree be drawn up under the rule.