ELLA PITZEL

*v.*

ALBERT SCHNEIDER, Exr.

*Opinion filed June 23, 1905.*

1. WILLS—*when right to take is not limited to grandchildren in esse at testator's death.* A clause of a will providing that all of the testator's estate "shall be divided among *all* of the children" of his son and daughter "that shall attain the age of twenty-one if a female and twenty-five if a male," does not restrict the right to take to grandchildren *in esse* at the testator's death.

2. SAME—*when trust violates rule against perpetuities.* A trust created by will which places the testator's property in the hands of a trustee, there to remain during the lives of his son and daughter, and after both have died to remain in the trust fund until the youngest child of such son or daughter has reached the age of twenty-one years if a female and twenty-five years if a male, violates the rule against perpetuities.

3. SAME—*when trust provision must be held void.* Where the trust created by will is an entire and complete scheme for disposing of the testator's property, which will be defeated if part of the trust provision is held valid and part void, in case a portion of the provision is void the entire provision must be held void, and the trust fund falls under the operation of the Statute of Descent and vests in the legal heirs of the testator.

APPEAL from the Circuit Court of Kankakee county; the Hon. DORRANCE DIBELL, Judge, presiding.

W. R. HUNTER, and A. E. SMITH, for appellant.

EBEN B. GOWER, guardian *ad litem, pro se.*

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was a bill in chancery filed in the circuit court of Kankakee county by the appellee executor of the last will and testament of Peter Webler, deceased, praying the court to declare the true meaning and proper construction of the will, to enable the executor to execute the trust created thereby.

After providing for the payment of debts and funeral expenses and the expense of administering the estate and executing the trust the will is as follows, the clauses being re-numbered, for the reason that in the original will there is some confusion in that regard, which makes reference to the different clauses difficult:

"*Second*—I bequeath all my household goods and furniture, together with $600 in money, to my beloved wife, Sarah Webler, which, together with the other provisions in her favor in this will hereinafter contained, shall be received by her in lieu of her dower in all my real estate and of her widow's award.

"*Third*—Subject to the above provisions I give, devise and bequeath unto my executor and trustee hereinafter named, and such other person as he may appoint, as hereinafter provided, all the estate, both real and personal, that I may own at the time of my death, of every kind and nature and wheresoever situated, in trust nevertheless for the following purposes, to-wit:

"(1) To manage and control and lease all my real estate, (except my homestead place as long as my said wife shall live,) collect rents and to loan and invest at interest any money I may have at my death, either in possession of or to become due me after paying said debts, funeral expenses, expenses of administrating my estate and above provisions for my wife, and collect the interest arising from such loans and the rents accruing from my real estate, and the interest thus arising from such loans shall be disposed of in following manner by such executor and trustee:

"(2) [This subdivision of clause 3 authorizes the trustee to pay taxes, make repairs and to receive reasonable compensation, and need not be set forth.]

"(3) To pay my widow, Sarah Webler, so long as she shall live, $1000 per annum, and the balance of said income shall be divided annually between my son, George Webler, and my daughter, Ella Pitzel, share and share alike, subject

to the provisions hereinafter contained, and in case of the death of either of them, then the share to be paid to him or her shall go to the children of such deceased one, and after the death of such Sarah Webler the said $1000 so payable to her shall go into this residue and be payable to my said son and daughter or their children, in manner aforesaid, but in case of the death of either said George or Ella, and also the death of all the children of such deceased one, then the surviving son or daughter or surviving grandchildren shall receive all of such residue.

"*Fourth*—It is my desire that all my real estate, including my homestead, shall be ultimately divided equally between all the children of said George Webler and Ella Pitzel that shall attain the age of twenty-one if a female and twenty-five if a male, and that when either such my grand-son shall attain the age of twenty-five years or such my grand-daughter shall attain the age of twenty-one years, that such grand-son or grand-daughter shall receive the legal title to his or her apparent share of such real estate, estimating such share in proportion to the number of grandchildren then living. I therefore hereby authorize and direct the executor and trustee in this will mentioned, or any person appointed in pursuance of the provisions hereof, to make such estimate and also to make an estimate of the value of all the properties and pieces of such property and real estate, and to ascertain about what piece of such real property would be such apparent share of such grandchild so attaining such age, and in the absence of such piece then to ascertain what interest or share in any piece of such property would equal such apparent share; and such executor and trustee shall, as such, make, execute and deliver to such grandchild so attaining such age, a deed or deeds to such piece or such interest in such piece of such real property, and such grandchild so receiving such deed shall cease to participate in the income of said real estate aforesaid: *Provided, however,* that in case of the death of any of my said grandchildren before attain-

ing the ages, respectively, aforesaid, but after any such estimate and deed, then such grandchild so receiving such deed shall be entitled to a further share or interest so as to in the end divide my said real estate equally among my grandchildren attaining the ages aforesaid, to be estimated, adjusted and conveyed by such executor and trustee as in manner aforesaid.

"*Fifth*—That my said personal estate shall be equally divided between my grandchildren to be received by them, to be paid to them, respectively, when they shall attain twenty-one years of age if a female and twenty-five years if a male."

A codicil to the will bequeathed the sum of $100 to the Mound Grove Cemetery Association, which has been paid and the validity thereof is not here involved.

The appellee executor was appointed and constituted executor and trustee to execute the trust created by the will. The will bore date August 12, 1890. After the execution of the will and during the lifetime of the testator, Sarah Webler, wife of the testator, died, and the testator thereafter, on the 10th day of March, 1899, executed a codicil, by which he revoked all the provisions of his will relating to and providing for his wife.

The testator died October 18, 1901. His son, George Webler, and his daughter, Ella Pitzel, survived him and are still living. Both were married at the time the will was executed. George was then the father of two children, namely, Thomas C., born September 11, 1876, and Bennie H., born August 1, 1889, and after the making of the will and before the death of the testator a third son, Robert, was born on February 6, 1891. Ella Pitzel, at the time of the execution of the will, had four children, namely, Cora Bell, born September 30, 1880; John Peter, born March 11, 1883; Freddie O., born October 2, 1885, and Hattie A., born October 24, 1887, and after the execution of the will and before the death of the testator two other children were born to Ella, namely, Maud, born September 17, 1890, and George F.,

born January 27, 1893. At the time of the death of the testator, said Thomas C., son of George Webler, had arrived at the age of twenty-five years, and Cora Bell, the said eldest daughter of Ella Pitzel, had arrived at the age of twenty-one years.

The position of appellee is that the devise by said Peter Webler was to his grandchildren as a class, but that it was the intent of the testator, made manifest by the terms of said will, that said class should close at the time the first one of his grandchildren attained the age of distribution as fixed in said will; that as at the time of the death of said Peter Webler two of his grandchildren had attained the age of distribution, as aforesaid, said class was at the death of said Peter Webler closed; that said George Webler and Ella Pitzel do not take a life estate in the net income of said property, but that all they are entitled to is the income of the undivided portion of the estate of the testator which may from time to time remain in the hands and control of the executor and trustee of said will; that the interest of said George Webler and Ella Pitzel in said property will cease upon the arrival at the age of distribution, as fixed in said will, of the grandchild who was living at the death of the testator and was last to arrive at said age of distribution; that the net income of the entire estate should be divided between George Webler and Ella Pitzel, equally, each year, or in the event of the death of either, to his or her children until said trustee should so have conveyed and turned over said real estate and property to the grandchildren of the testator under the scheme of distribution set forth in said will; that under the scheme of disposition of said will each grandchild who was living at the time of the death of the testator, upon arriving at the age of twenty-five years if a male and twenty-one years if a female, should be entitled to and receive his equal share of said property, real and personal, and that upon that share or portion being set off, paid and turned over by the trustee to such grandchild so arriving at the fixed age of distribution, the

right to the income of that portion of the property theretofore had by George Webler and Ella Pitzel should then cease. The chancellor accepted this as the proper construction of the will. This is an appeal to reverse that decree.

We conceive that the chancellor has not correctly interpreted the intention of the testator. The intent of the testator, as we think it to be disclosed by the will, was, that his children, George Webler and Ella Pitzel, should each annually receive for and during his or her life one-half of the income arising from the rents of the real estate and the interest on the moneys in the hands of the trustee, and that in the event of the death of either George or Ella leaving no children, the survivor should take the entire income during his or her life, and that if one of them should die leaving children, the income should be paid one-half to the survivor during life and the other one-half to the children of the deceased son or daughter until the death of the survivor, and that it was the further intent of the testator that all grandchildren, whether born before or after his death, who should, if a male, arrive at the age of twenty-five years, and if a female, at the age of twenty-one years, should ultimately share in the *corpus* of the trust fund equally, after the death of the children of the testator.

That the children of the testator, George Webler and Ella Pitzel, were to enjoy, in equal parts, the income from the trust estate for their respective lives is indicated too clearly to be misunderstood, by the provisions of the third subdivision of the third clause of the will. The language of that clause (excluding all that is said with reference to Sarah Webler, wife of the testator, who pre-deceased him,) is, that "said income shall be divided annually between my son, George Webler, and my daughter, Ella Pitzel, share and share alike, *subject to the provisions hereinafter contained,* and in case of the death of either of them, then the share to be paid to him or her shall go to the children of such deceased one; * * * but in case of the death of either said

George or Ella, and also the death of all the children of such deceased one, then the surviving son or daughter or surviving grandchildren shall receive all of such residue." The words "subject to the provisions hereinafter contained," which we have caused to be italicized in the above quotation, have reference, it is contended, to certain provisions found in the fourth clause of the will. It is argued in behalf of the appellee, who, it will be remembered, contends that only such grandchildren as were *in esse* at the date of the death of the testator are entitled to take under the will, that the provisions of the fourth clause of the will show that the testator intended that any grandchild (so entitled to take) who, if a female, had attained the age of twenty-one years, or, if a male, had attained the age of twenty-five years, should, on attaining such age, "receive the legal title to his or her apparent share of the real estate of which the testator died seized, estimating such share in proportion to the number of grandchildren then living," and that it is manifest from this provision that the right of each of such grandchildren to take such legal title became complete when he or she arrived at the age fixed upon for the distribution, though his or her parent be then living.

The error of this argument plainly appears when the fourth clause of the will is carefully considered. This clause, as is expressly declared in the opening lines thereof, relates to the division to be "ultimately" made, and declares that the real estate, including the homestead, shall be "ultimately divided between *all* the children of George Webler and Ella Pitzel." From this expression it is seen that it was not the intention of the testator to restrict his bounty to such, only, of the children of George and Ella as should be *in esse* at the time of his death, but that all of the children of both George and Ella who should attain the specified age should share "ultimately" in his real estate. It must be remembered that when the clause was written the wife of the testator was living, and the scheme and purpose of the testator

were, as shown by the first subdivision of the third clause, that his wife should occupy the homestead so long as she should live, and it cannot be denied that when this fourth clause was penned the ultimate division therein directed to be made was not to be made at once whenever a grandchild should arrive at the specified age, but at a later period, when the homestead should no longer be occupied by the wife. And we think other provisions of the fourth clause of the will indicate clearly that the "ultimate" division was not to take place even then, and not while either George or Ella was living. The subsequent provisions to which we refer are those in which the testator, after endeavoring to secure the distribution of the real estate in kind when made, and for the conveyance, if practicable, of portions of the real estate to his grandchildren, provided that after such grandchild should have received a deed for his or her share, such grandchild should "cease to participate in the income of said real estate aforesaid." Manifestly it was not the intent this division should take place until after the grandchild so entitled to take had attained the right to "participate in the income of said real estate."

The third subdivision of the third clause of the will provided that in case of the death of either of the children of the testator, George or Ella, the share of such deceased son or daughter in the income of the estate shall go to the children of such deceased son or daughter. There is no other provision in the will authorizing the grandchildren to participate in the income, and as the division provided for in the fourth clause is only among or to such grandchild or grandchildren as have, by reason of the death of his or her parent, succeeded to the right to have a share in the income of the estate, it follows the "ultimate" division therein contemplated can only be made after the life interest of such parent has ceased. This view of the meaning of the fourth clause, it is argued, is inconsistent with the provisions of the proviso of that clause. This proviso is as follows: *"Pro-*

*vided, however,* that in case of the death of any of my said grandchildren before attaining the ages, respectively, aforesaid, but after any such estimate and deed, then such grandchild so receiving such deed shall be entitled to a further share or interest so as to in the end divide my said real estate equally among my grandchildren attaining the ages aforesaid, to be estimated, adjusted and conveyed by such executor and trustee in the manner aforesaid." And it is contended, also, this proviso cannot be reconciled with the view hereinbefore expressed that it was the intention of the testator that his estate should "ultimately" go to all of his grandchildren who should attain the specified ages, and not only to such of his grandchildren as should be *in esse* at the time of his death. This proviso directs the course to be pursued in the event the grandchild who attains the requisite age and shall have received a deed for his or her then apparent share of the real estate, and who, by reason of the subsequent death of another grandchild before arriving at the specified age, becomes entitled to a further share or interest in such estate, and makes no provision for a decrease or reduction of the share so received, which would, so it is argued, follow from the subsequent birth of a brother or sister to the grandchild who had received such apparent share. But, as we have seen, the only provision for the division of the estate among grandchildren is to or among such grandchildren as have, by reason of the death of his or her parent, become entitled to participate in the income. It follows that the "ultimate" division contemplated by the fourth clause is only to be made after the death of the parent, and hence among grandchildren whose number cannot be increased but whose number may be diminished by the death of some of them before arriving at the age specified in the will at which they were entitled to receive deeds to their real estate. If the right to take did not arise until after the death of the parent, clearly the only changes which could subsequently occur in the interest or share would occur by reason of the death of some one

of those entitled to take, and thus the only changes would
be such as would increase, and not diminish, the shares.

Clause 5 provided: "That my said personal estate shall
be equally divided between my grandchildren to be received
by them, to be paid to them, respectively, when they shall
attain twenty-one years of age if a female and twenty-five
years if a male." This clause, it is insisted by counsel for
appellee, is inconsistent with the view that the personal es-
tate of the testator should not be divided until after the death
of his children, or one of them. But we think that if the
third clause of the will (the clause from which we have ar-
rived at the conclusion that the entire trust fund should be
retained in the hands of the trustee undivided while either
of the children of the testator is still living) be read and
considered in connection with the fifth clause, the true intent
of the testator will be disclosed as we have declared it to be.

The fourth clause relates to the division of the real estate,
and, as we have seen, only contemplated a division to be
made after the death of the children of the testator. Clause 3
bequeaths both the real and personal property to the execu-
tor in trust. The first subdivision of the same clause author-
izes the trustee to create a fund by means of rents received
from the real estate and interest on moneys, and the third
subdivision of the same clause provides the fund thus pro-
duced from the rents and interest, being the income of the
trust property, shall annually be divided equally between the
son and daughter of the testator, and in case of the death
of either of them the share of such income shall go to the
children of such deceased son or daughter. It is unmistak-
able, therefore, that the trustee was to retain the personal
estate reduced to money so long as both the son and daugh-
ter of the testator should live, and after the death of one
should still retain the same, together with the income from
the real estate, and should pay such income, one-half to the
surviving son or daughter and the other one-half to the chil-
dren of the deceased son or daughter. The "ultimate divi-

sion" thereafter to be made, namely, the division of the *corpus* of the trust, could not occur until after the death of the son, and daughter of the testator, and the division provided for by the fifth clause of the will is the same as that which in the fourth clause of the will was denominated the "ultimate division."

The plan and purpose, then, of the testator was to place his property in the hands of a trustee, there to remain during the lives of his son and daughter, George and Ella, and after they had each died, the same, or portions thereof, to remain in the trust fund until the youngest child of said George or Ella should survive to reach the age, if a male, of twenty-five years, and if a female, of the age of twenty-one years. No presumption can be indulged that other children may not yet be born to either or to both George Webler and Ella Pitzel. If a son be born to either of them, the will, if given effect, would require the trust to be kept open for execution until such son should reach the age of twenty-five years, which period, it is clear, might not occur until more than twenty-one years after the death of the parent. This plan or scheme of the testator contemplated and directed the creation of a trust, the conditions of which it is possible can not be performed within twenty-one years after the expiration of the life or lives of his son and daughter.

Attempted testamentary devises or bequests to a parent for life and with remainder over to a child or children of such parent not *in esse* at the death of the testator, on such child attaining a specified age exceeding twenty-one years, is invalid, as being too remote and as possibly operating to create a perpetuity. No interest under a will subject to condition precedent is good unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the interest. If the contingent event can possibly happen beyond the limits of the rule against perpetuities, the interest conditioned on it is invalid, as being too remote, although such event will probably happen within

216—7

the rule. (*Lawrence* v. *Smith,* 163 Ill. 149.)  A limitation over so conditioned that it may not take effect within a life or lives in being and twenty-one years thereafter is void. *Post* v. *Rohrbach,* 142 Ill. 600.

The trust attempted to be created by the will is an entire and complete scheme for the control and disposition of the property of the testator remaining after the payment of his debts, the expenses of administration and the legacy to the Mound Grove Cemetery Association.  The trust provisions cannot be held to be in part valid and in part void without defeating, in part, the intention of the testator, hence they must be held invalid as a whole.  The trust fund, therefore, falls under the operation of the Statute of Descent and vests in the legal heirs of the testator.

The decree appealed from will be reversed and the cause remanded, with directions to enter a decree in conformity with what is here said.

*Reversed and remanded, with directions.*