JOHN H. MEEKER, trustee,

*v.*

KATHERINE G. FORBES et al.

[Decided March 30th, 1915.]

1. The words "heirs-at-law," in a will disposing of personalty, mean next of kin under the statute of distribution, and include a surviving wife.

2. Where there is a testamentary gift of real and personal property to heirs-at-law, heirs-at-law, properly so called, take the realty, while next of kin under the statute of distribution take the personalty.

3. Testator gave the income of his residuary estate to his wife for life and after her death in trust to divide the same between his nephews and nieces, and declared that in case any nephew or niece should die before the death of himself or wife the share of the deceased niece or nephew should be divided among his or her heirs-at-law, the same as would have been done if the niece or nephew had been paid his or her share from the estate.—*Held,* that, on the death of a niece in the lifetime of the wife, her heirs-at-law took under the will and not from the niece.

4. Testator gave his residuary estate to his wife for life and after her death in trust to nephews and nieces, and provided that on the death before the death of testator, or his wife, of any nephew or niece, his or her share should be divided among his or her heirs-at-law, and gave the trustee authority to sell. A nephew died before testator, leaving a widow and children. Thereafter part of the real estate was sold by the widow. Thereafter other nephews died.—*Held,* that the children of the nephew dying before testator took the share of the proceeds of the sale of the real estate as if it remained real estate, while the children and widows of the other nephews dying after the sale took the proceeds as other personal property.

5. Where real and personal estate is given to a trustee in trust for a class with discretionary power to convert the whole into personalty, and the trustee makes a total or partial conversion, the beneficiaries will take the property as real or personal property according to the condition in which it is found.

---

*Mr. John H. Meeker, pro se.*

*Mr. Atwood L. DeCoster,* for Helen Armitage.

*Messrs. Vredenburgh, Wall & Carey,* for Abbie L. Meeker.

*Mr. Auguste Roche, Jr.,* for Katherine G. Forbes et al.

STEVENS, V. C.

This is a bill for the construction of the will of Charles H. Meeker, who died in October, 1902. Testator gave the income of the residue of his estate, real and personal, to his wife, Mary, and, after her decease, to his nephew, the complainant in trust, to divide the same, both real and personal, into three equal portions, one of which he gave and devised to the children of his deceased brother Samuel A. Meeker; another to the children of his deceased brother John H. Meeker, and the remaining portion to the children of his deceased sister, Martha A. Halstead.

By clause 7 he provided as follows:

"In case any child of my deceased brothers and sister should become deceased before the decease of myself or of my wife, I hereby direct that the share of such deceased child in my estate be paid and divided among his or heirs-at-law, the same as would have been done, if such child had been paid or received his or her share from my estate."

The will gives the trustee "full power and authority to sell" the real estate and distribute the proceeds, but does not, by a mandatory clause, direct him to· do so.

Frederick W. Meeker and Oliver M. Halstead, two of the nephews, died, in the lifetime of testator's widow, leaving widows but no children. Samuel, another nephew, died, leaving a widow and two children. Martha M. Mapes, a niece, died, leaving a husband and three children, while Ducie H. Rudisch died childless, leaving a husband. The testator directing that the shares of the nephews and nieces thus dying shall "be paid and divided among his or her heirs-at-law," the question is, who are these heirs?

It is well settled that when the words "heirs-at-law" are used by a testator in respect of personal property they mean next of kin (*Trenton Trust and Safe Deposit Co.* v. *Donnelly, 65 N. J. Eq. 120*) ; not next of kin in the technical sense of nearest kinsmen, but in the sense of distributees under the statute·of distributions, thus including the widow. *Welsh* v. *Crater, 32 N. J. Eq. 180; on appeal, 33 N. J. Eq. 362; Reen* v. *Wagner, 51 N. J. Eq. 1; Leavitt* v. *Dunn, 56 N. J. Law 310.* Where there is both personalty and realty, and the testator gives to "heirs-at-law," heirs-at-law, properly so called, take the realty, and next of kin, in the sense of distributees under the statute, take the personalty. *Hayes* v. *King, 37 N. J. Eq. 1; Ward* v. *Dodd, 41 N. J. Eq. 414.* It was so held in the latter of these cases where, as in the case in hand, there was a simple power to sell. Hence, Abbie Meeker, widow of Frederick Meeker, took such part of the share bequeathed to her husband as the statute gave her at the time of his death. This share vested in her and in the next of kin, in the manner then prescribed by statute. It was not divested by a subsequent change in the law. *Shedaker's Case, 74 N. J. Eq. 802.* The widow of Oliver M. Halstead took in like manner. The widow of Samuel Meeker shares with her two children.

18

.The respective husbands of Mrs. Mapes and Mrs. Rudisch take nothing, for the plain reason that they are not distributees under the statute of distributions or heirs under the statute of descent. The former statute puts only wives in the class of next of kin. Husbands are not put in the class of heirs by the latter statute, or by the rules of the common law. They take nothing through their wives; for the interest of their wives was divested at death.

It is, however, suggested that when the trustee was directed to divide the wife's share among her heirs-at-law, "the same as would have been done if such child had been paid or received his or her share from my said estate," the direction shows an intent to preserve intact the interest of the daughter, so that it will pass under her will or go to her husband *jure mariti.* This construction would nullify the clause altogether and might result in giving the share to persons other than her "heirs-at-law." If the testator had intended to allow the daughter's share to go to legatees of her appointment or to her husband if she died intestate, he would have omitted the clause altogether. What he evidently meant was that on the death of the niece, in the lifetime of the widow, her "heirs-at-law"—a well-defined class of persons of her blood—should be *substituted,* not as *her* donees, but as *his own;* that, in other words, the gift was to proceed from him and not from her. The clumsy phrase, "the same as would have been done if the child had received her share from my estate," was intended to emphasize this view. It was only *heirs-at-law* who were to take, and they were to take just as if the child had first received the bequest and had died, leaving—not devisees or legatees, but heirs—in other words, had died intestate.

The money realized from the sale of the Carteret lots, sold by testator's widow in July, 1904, is plainly personalty, as to those whose interests vested after the sale, and should be distributed as such. *Keen* v. *Plume, 82 N. J. Eq. 527.* But Samuel Meeker, one of the nephews, died before testator, and, of course, before the sale; the fact that he died before testator is immaterial, for the will puts his heirs-at-law on the same footing as the heirs of his other nephews and nieces. But the fact that he died before the sale gives rise to another question. Leaving, as he did, a widow and two children, it is contended that they take their share

of the proceeds just as they take the other personalty, and *Keen* v. *Plume, supra,* and *Kouvalinka* v. *Geibel, 40 N. J. Eq. 443,* are cited as sustaining this contention. As I read those two cases, they do no more than hold that the property is taken in the condition in which it is found at the period of vesting. If it be real estate at that period it vests as real estate; if it be personal property it vests as personal property. Having once vested, its devolution cannot, by any act of the trustee, be changed. The limitation to the heirs of the nephews and nieces is the ultimate limitation, and the title, when it reaches them, is "at home." It is true that the power to vary the form of the trust property— a power frequently conferred—has been accorded to the trustee in this instance, but the testator has not authorized him to divest that which has, by the explicit language of the will, been finally vested in the heirs.

The rule applicable to the case is thus stated in *3 Lew. Trusts 951:*

"If real and personal estate be given to trustees upon trust for a class, with a *discretionary* and not an imperative power to convert the whole into personal estate, and if the trustees make a total or partial conversion, the objects of the trust will take the property as real or personal estate, according to the actual condition in which it is found."

This rule is illustrated by *Wright* v. *Rose, 2 S. & St. 323,* a case frequently cited. There, a mortgage deed contained a power of sale with a direction that the surplus should be paid to the mortgagor, his executors and administrators. The sale did not take place until after the mortgagor's death and the contest over the surplus was between the personal and real representative. The vice-chancellor said: "If the estate had been sold by the mortgagee in the lifetime of the mortgagor, then the surplus would have been personal estate of the mortgagor. * * * But the estate being unsold at the death of the mortgagor, the equity of redemption descended to his heir and he is now entitled to the surplus produce."

The subject of the effect of conversion on the relative rights of the heir-at-law and next of kin is discussed in the note to the leading case of *Ackroyd* v. *Smithson, 1 L. C. Eq. *872.* The distinction is between a direction to convert that is imperative

and an authority that is discretionary. "Whenever," says Chancellor Zabriskie, in *Wurts' Executors* v. *Paige, 19 N. J. Eq. 375,* "a testator has positively directed his real estate to be sold and distributed as money, it will be considered for the purposes of succession as personal," but where he simply authorizes and empowers his executor to do so, "the real property could not be considered as converted into personal property until actually sold."

On this distinction, it seems to me plain that the children of Samuel Meeker take his share of the proceeds of the sale of the Carteret lots as if it were land. The children and widows of those nephews who died after the lots were sold take as they take the other personal property.

There is no evidence going to show how the Florida lands vest under the laws of Florida. Consequently, nothing is determined as to their proceeds.