THE PENNSYLVANIA COMPANY FOR INSURANCE ON LIVES AND GRANTING ANNUITIES, trustee under the will of Fietta Alsfelt, deceased,

*v.*

MARY RILEY et al.

[Submitted June 24th, 1918.    Determined July 5th, 1918.]

1. A bequest of $1,000 out of the sale of a house of testatrix given in trust for the education of the legatee is a demonstrative legacy.

2. A direction that money coming to the estate from a purchase-money mortgage be held in trust, and the income divided among children named, is a specific legacy.

3. A demonstrative legacy, to be paid from the proceeds of the sale of a house, does not necessarily fail if the house is disposed of by the testatrix in her lifetime.    It assumes the status of a general legacy, and should be paid from other personal assets of the testatrix or, if properly charged, from testatrix's real estate.

4. Where the property to pay a demonstrative legacy had been sold, and the only other property of the testatrix had been specifically disposed of by the will, such demonstrative legacy must fail.

5. Where the will bequeaths the income of a trust fund to be divided equally among two beneficiaries and the principal to be divided "after their death" among reversionary legatees, on the death of one beneficiary, one-half of the fund is distributable.

6. Where a gift is to several persons by name, the presumption arises that they take in their individual capacity and not collectively, even though the persons named constitute a class.

7. Under the language of the will to be construed, the bequest vests at the death of the testatrix, and the share of the reversionary legatee who died after the death of the testatrix, is payable to his estate.

On final hearing on bill for construction of will.

*Mr. Marlin V. Bergen,* for the complainant.

*Mr. Clarence L. Cole,* for the defendants Mary Riley and others.

*Mr. Edwin F. Crane,* for the defendant Theresa Riley, administratrix.

LEAMING, V. C.

By this suit complainants seek judicial construction of the will of Fietta Alsfelt, deceased.

The provisions of the will, construction of which is herein sought, are as follows:

"6. I direct that out of the proceeds of the sale of my house or other property, one thousand dollars shall be set apart and held in trust by my executor, for the education of Robert Lewis Read, child of my grand-daughter. Mrs. Florence S. Read. nee Riley, and in case of his death, the said sum shall be divided equally between my grandchildren, Frank A. Riley, Mary Riley, Joseph H. Riley, Robert Riley, Fietta J. Alsfelt, Knight Alsfelt, Robert Alsfelt and Rachel Alsfelt.

"7. I direct that the twenty-six thousand dollars coming to my estate from the sale of the Norwood, shall be held in trust by my executor, and the income therefrom shall be divided equally between by children, Mrs. Mary Riley and Mr. William H. Alsfelt, during their lifetime; and after their death, the principal shall be divided equally between my grandchildren, Frank S. Riley, Robert Riley, Joseph H. Riley, Mary Riley, Fietta J. Alsfelt, Knight Alsfelt, Robert Alsfelt and Rachel Alsfelt and Robert Lewis Read, son of Florence S. Read—nee Riley, or the survivors or heirs of them."

At the death of testatrix she had disposed of the house referred to in the sixth item of the will above quoted, and had no other property which could be sold for or applied to the purpose named except $26,000; that money was the proceeds of a purchase-money mortgage of $26,000 on the Norwood, which mortgage represented the $26,000 referred to in the seventh item of the will above quoted; the mortgage had recently been paid and the money was intact at the time of the death of testatrix. All other property of testatrix, and also $2,000 of the proceeds of the $26,000 mortgage, has since been used by the executors to pay debts of testatrix.

The first inquiry relates to the status of the bequest in the sixth item of the will.

This bequest is a demonstrative legacy. The circumstance that testatrix at her death did not own the property out of which she directed the bequest to be paid is not alone operative to wholly defeat the bequest. A demonstrative legacy, so circumstanced, assumes the status of a general legacy and should be paid from other personal assets of a testator, and, if properly

charged, from testator's real estate. But, as already stated, no other assets of testatrix existed except the proceeds of the Norwood mortgage, and that mortgage was specifically disposed of by the seventh item of the will. The trust bequest of the Norwood mortgage is a specific legacy; this is fully disclosed by the authorities collected in *Mecum* v. *Stoughton, 81 N. J. Eq. 319,* and *Kearns* v. *Kearns, 77 N. J. Eq. 453,* and the $26,000 representing its proceeds has been identified in a manner that clearly subjects the proceeds to the operation of the bequest. As general legacies must abate before specific legacies, it necessarily follows that the demonstrative legacy of the sixth item of the will fails. *Johnson* v. *Conover, 54 N. J. Eq. 333; Tichenor* v. *Tichenor, 41 N. J. Eq. 39.*

Doubts touching the seventh item of the will have arisen by reason of the following circumstances:

At the death of testatrix all the persons named in the seventh item of the will were alive. Robert Riley, one of the reversionary legatees, died October 4th, 1912, intestate and without issue. William H. Alsfelt, one of the life beneficiaries, died August 1st, 1915. Mary Riley, the remaining life beneficiary, and all the reversionary legatees, except Robert Riley, are still alive. Instructions are now sought as to whether any part of the *corpus* of the trust fund became distributable at the death of William H. Alsfelt, and, if so, what disposition is to be made of it.

At the death of William H. Alsfelt one-half of the *corpus* of the trust fund became distributable. It has been uniformly so held in this state in construing similar language in all cases in which no other part of the will manifests a contrary intent. *Woolston* v. *Beck, 34 N. J. Eq. 74; Stoutenburgh* v. *Moore, 37 N. J. Eq. 63; affirmed, 38 N. J. Eq. 281; Collins* v. *Wardell, 65 N. J. Eq. 366; Merriam* v. *Dunham, 62 N. J. Eq. 567.* In *Kellogg* v. *Burnett, 74 N. J. Eq. 304,* the words "after the decease of my said two children" were held to mean after the decease of both; but that construction was there made necessary because of a reversion to a class which could not be ascertained until the death of both life tenants. It was, however, there recognized, consistently with the cases above cited, that the direction for equal division of income between the life tenants is inconsistent

with a right in the income in the nature of a joint tenancy. The language "during their lifetime," as used in the seventh item of the will here in question, must accordingly be understood to mean during their lifetime respectively. It follows that at the death of William H. Alsfelt one-half of the *corpus* of the trust fund became distributable.

But for the concluding words of the seventh item of the will, namely, "or the survivors or heirs of them," little, if any, doubt could be entertained touching the manner of distribution at this time of one-half of the *corpus* of the trust fund.

The direction contained in the will is to "divide equally between" the persons specifically named. All the persons named are grandchildren of testatrix, except one, who is a great-grandchild; the enumeration of persons includes all of the grandchildren of testatrix and her only great-grandchild; the several grandchildren named are the children of the respective life tenants; the great-grandchild is a child of a deceased granddaughter of testatrix. Where a gift is to several persons by name, a presumption arises, in the absence of a contrary intent apparent on the face of the will, that the persons named are to take in their individual, and not in their collective capacity, even though the persons named constitute a class or classes. *Dildine* v. *Dildine, 32 N. J. Eq. 78.* It follows that the manner of distribution of the *corpus* of the trust fund as contemplated by the will is *per capita* as distinguished from *per stirpes.*

It also seems clear that in the absence of the concluding words of the bequest, already referred to, the reversionary rights of the several grandchildren and the great-grandchild named in the bequest necessarily would be regarded as vested interests at the death of testatrix, as pointed out in *Security Trust Co.* v. *Lovett, 78 N. J. Eq. 445,* since there is to be found in the several reversionary legatees at the death of the testatrix a present right of future enjoyment, and that right of future enjoyment limited only on an event—the death of a life tenant—which was certain to happen, and the several reversionary legatees capable of taking in possession at any time either of the life estates should be spent; it is the uncertainty of the right of enjoyment, and not the uncertainty of actual enjoyment which prevents a right from

vesting and renders it contingent. And even though the concluding words of the bequest should be understood as creative of a right by survivorship in those surviving in the event of the decease of a reversionary legatee before the period for distribution, the interest of such legatee would be regarded as a vested interest subject to being divested by death before the period of distribution.

Accordingly, it remains to consider whether the words "or the survivor or heirs of them," as used at the conclusion of the bequest, are found to be restrictive of the gift in such manner as to confer upon the survivors or upon certain heirs a right to the share of a legatee dying before the period for distribution. As hereinabove stated, Robert Riley, one of the reversionary legatees, died intestate and without issue after the death of testatrix and before the death of William H. Alsfelt, one of the life tenants, whose death made a distribution of one-half of the *corpus* necessary.

It will be conceded that the force to be attributed to the language in question here is difficult of ascertainment. Had the word "survivors" been used without the word "heirs," the language would have clearly related to the survivors at the death of the life tenant, and Robert thus would have been excluded. *Stout* v. *Cook, 79 N. J. Eq. 573, 576.* But the words "survivors" and "heirs," as here used, appear to be wholly irreconcilable, unless some artificial or restricted meaning shall be attributed to the words without satisfactory indication of the intention of testatrix in that respect. Testatrix may have intended by the word "heirs" to refer to issue or descendants, and in that manner may have sought to provide that in the event of the death of a residuary legatee, without issue, before the period for distribution, his or her share should be paid to the then survivors; but that construction of the language used by testatrix would attribute an artificial meaning to the word "heirs" and would be essentially conjectural and without the support of substantial evidence of such actual intent. A construction giving more adherence to accepted rules of construction would be to regard the disjunctive word "or" before the words "survivors" and "heirs," respectively, as strictly substitutionary, as distinguished from the

copulative word "and"—which latter word, when so used, ordinarily denotes quality or duration of the estate to be taken—and thus impute to testatrix an intent to substitute as objects of her bounty survivors or heirs for one dying before the period for distribution; but that construction presents the incongruity of two substituted and antagonistic classes of takers without indication of their precedence except such as might be inferred by the order in which they are named. *In re Stannard, 52 L. J. Ch. 355; 48 L. T. Rep. (N. S.) 660,* with somewhat similar language before the court for construction, the view was adopted that force should be given to both the word "survivors" and "heirs," and that this could not be done by relating the gift to the period of death of the life tenant, since in such case the substitutionary word "heirs" would be in conflict with the word "survivors." Accordingly, the gift was held to relate to the death of the testator and thus be to those who survived the testator and to the heirs of any who did not survive testator. But in the will now under consideration the direction is for distribution to specific persons at the death of the life tenant, "or the survivors or heirs of them." Perhaps other more or less reasonable conjectures could be indulged as to the possible intent of testatrix in the use of this peculiar and almost meaningless language selected by her; but no suggestion has been made that appears to have the support of a forceful manifestation of a defined intent upon her part. In such circumstances the conclusion appears to be impelled that the language here under consideration cannot be properly given any defined force which shall be operative to so restrict the several reversionary gifts that they may not be regarded as vested in right at the death of the testatrix. Accordingly, the share of Robert Riley will be paid to his administrator for the benefit of Robert's estate.