ESSEX COUNTY ORPHANS COURT.

## IN THE MATTER OF THE ESTATE OF THEODORE KOELLHOFFER, DECEASED.

Decided April 16, 1942.

For the petitioner et al., *Harry Kay.*

For the several respondents, *Howard F. Casselman, E. A. & W. A. Schilling* and *Harold Laifer.*

CLAPP, A. M.   Seeking an order of distribution, Edward Turner, substituted trustee under the will of Theodore Koellhoffer, Sr., lays before the court for construction a clause of the will reading thus:

*"Fourth:* I give, devise and bequeath unto my executors hereinafter named, the remaining three-sixths parts of my estate in trust, to collect the rents, issues and profits and pay

the same over to my sons Theodore Koellhoffer and Charles Koellhoffer and to my daughter Mary Blank equally, share and share alike, during their lives, and upon the death of either or any or all of them, then I give, devise and bequeath the shares so given to them for life to their children and heirs at law to be vested in each such child when he or she shall arrive at the age of twenty-four years."

Theodore, Sr., the testator, died in 1919 survived by six children, the three who take under the trust set up in the fourth clause, and three other sons, Anthony, Conrad and George, each of whom take under the third clause of the will a sixth part of his estate outright. All six children have now died save Mary Blank; and all the children of Theodore, Jr., and Charles living at the testator's death or born thereafter have attained twenty-four.

Precisely, the court's directions are sought respecting the *corpus* of the shares of which Theodore, Jr., and Charles each had had the income during his life, and respecting the income that has been accumulating thereon since his death.

Before turning to the several difficult issues presented, it may be noticed that the distribution of these two shares need not await the death of Mary Blank. For, notwithstanding that the gift of income is to Theodore, Jr., Charles and Mary "during their lives," they, because of the words of severance— to wit, the words "equally share and share alike"—are held to take the income but as tenants in common; and (stressing the language of the gift) "upon the death of * * * any * * * of them," the distribution of the share of *corpus* of which the one dying had had the income, may be made immediately. *Stoutenburgh* v. *Moore,* 37 *N. J. Eq.* 63; *affirmed,* 38 *Id.* 281; *Pennsylvania Company, &c.,* v. *Riley,* 89 *Id.* 253, 254; 104 *Atl. Rep.* 225; *Vreeland* v. *Van Ryper,* 17 *N. J. Eq.* 133; *Huff* v. *Ferguson,* 110 *Id.* 86; 159 *Atl. Rep.* 152.

The principal question presented is whether the future interests to the children of Theodore, Jr., and Charles contravene the rule against perpetuities; and that question turns upon the interpretation to be put upon the word "vested"— whether it is to be construed as "vested in interest" or as

"vested in possession." *Cf. Carroll* v. *Newark, 108 N. J. L.* 323, 328; 158 *Atl. Rep.* 458.

*Prima facie* the word means "vested in interest." *Re Thatcher's Trust, 26 Beav.* 365; *Blakemore's Settlement, 20 Id.* 214; *Griffith* v. *Blunt, 4 Id.* 248; *Morse's Settlement, 21 Id.* 174; *Comport* v. *Austen, 12 Sim.* 218; *Rowland* v. *Tawney, 26 Beav.* 67; *Land* v. *St. Louis Union Trust Co., 298 Mo.* 148. However, a different significance has been put upon the word under circumstances and in limitations not here presented. *Armytage* v. *Williams, 3 A. C.* 355, 372; *Polsky* v. *Continental National Bank, 110 Fed. Rep.* (2d) 50; *In re Landis, 46 Id.* 524; *In re Glann's Estate, 177 Cal.* 347; *Burney* v. *Arnold, 134 Ga.* 141; *Busich* v. *Busich, 65 Ind. App.* 655 (but see *Macy* v. *Haneisen, 100 Id.* 162); *Jacobs* v. *Whitney, 205 Mass.* 477; *In re Phillip's Estate, 205 Pa.* 504; *In re Stocker's Estate, 260 Id.* 385; 1 *Theo. on Wills* (7th ed.) 582; 2 *Jarm. on Wills* (6th Am. Ed.) *1623; 34 *Hal. Law* (2d ed.) 369. When there is nothing in the context to show that the word is to be taken otherwise than in its *prima facie* sense, then in the positive phrase of Jarmin "all discussion is of course precluded." 1 *Jarm. Id.* *807.

The context into which the word fits here, is barren of assistance, unless the words "I give, devise and bequeath" introducing the future gift are of more import than a conveyancer's flourish. Where future interests are given with verbs of present gift, such as those quoted, it has been said that the verbs convey a design to render the gift effective as of the time the will first speaks—that is, the time of the testator's death. *In re Collins' Estate, 99 N. J. Eq.* 333, 338; 133 *Atl. Rep.* 188; *Cook* v. *McDowell, 52 N. J. Eq.* 351; 30 *Atl. Rep.* 24; *Miller* v. *Worrall, 59 N. J. Eq.* 134; 44 *Atl. Rep.* 890; affirmed in this regard, 62 *N. J. Eq.* 775. The words may carry that design in the cases cited which were of gifts to persons *nominatim* and to testator's children, where the takers of the gift are determinable at the testator's death. But here it is sought to have them construed as rendering the gift effective not at the time the will first speaks (the testator's grandchildren born after his death are certainly not

to be excluded) but at the earliest plausible time thereafter—namely, when the life takers die. The verbs point no more readily to an early future than to a remote future. I need not measure the weight of these words in general; suffice it to say that they will not tip the constructional balance here.

It may be remarked that the interpretation here put upon the word "vested" will postpone the vesting of the future interests; and that the court leans rather toward the early vesting of gifts, particularly residuary gifts where there is no limitation over if circumstances prevent them from vesting. *Kimble* v. *White,* 50 *N. J. Eq.* 28; 24 *Atl. Rep.* 400; *affirmed,* 51 *N. J. Eq.* 638; 30 *Atl. Rep.* 430; *Cf. Gifford* v. *Thorn,* 9 *N. J. Eq.* 702, 707. But such a constructional tendency cannot be used to fasten one *prima facie* significance upon a word when it refers to a particular gift and another when it refers to a residuary gift. For cases of residuary gifts where the interpretation of the word "vested" was that given here, see *Re Thatcher's Trust, supra; Griffith* v. *Blunt, supra; Glanville* v. *Glanville,* 2 *Mer.* 38; *Russell* v. *Buchanan,* 7 *Sim.* 628; *In re Coppard's Estate,* 35 *Ch. D.* 350; *Land* v. *St. Louis Union Trust Co., supra.*

Nor is the *prima facie* sense of the word "vested" to be broken down because the whole will is crudely drawn in a number of respects that need not be recounted. For there is no indication from the instrument or, for that fact, any other proof that the unskilled draftsman used the word in any other sense.

Nor again can the interpretation of the word be turned about because otherwise the testator's dispositive scheme is torn up by the rule against perpetuities. For in this state it is established that the words of the will are to be construed as if the rule did not exist and then to the provisions so construed the rule is—in the quaint words of Gray—"to be remorselessly applied." *First Camden National Bank and Trust Co.* v. *Collins,* 114 *N. J. Eq.* 59; 168 *Atl. Rep.* 275.

The gift in trust may then be regarded as of one to a parent for life with the principal passing upon his death to such of his children as reach twenty-four. A portion will vest in each child as he attains twenty-four. But since the

full amount of his portion may not be ascertained for more than life in being plus twenty-one years after the testator's death, the future interests to the children contravene the rule. *McGill* v. *Trust Company of New Jersey*, 94 *N. J. Eq.* 657; 121 *Atl. Rep.* 760; *modified*, 96 *N. J. Eq.* 331; 125 *Atl. Rep.* 308. In the face of that decision of the Court of Errors, it is not for an advisory master of this court to examine into the interesting thesis of Professor W. Barton Leach, 51 *Harvard Law Rev.* 1329, leading to a contrary conclusion.

The fact that Mary Pfeiffer, a child of Charles, was twenty-four at the testator's death will not save the limitation to Charles' children. (Perhaps, too, there was a child of Theodore, Jr., then twenty-four.) Indeed the gift vested in interest as to Mary on the testator's death. *McGill* v. *Trust Company of New Jersey, supra* (at *p.* 665). But the *quantum* of the gift was not then determinable. Consider the matter supposititiously viewing it, as one must, from the testator's death: Charles might have another child, A, born at his death and Mary might then die. If A should reach twenty-four, Mary's personal representative will share the *corpus* with A. But if A dies before twenty-four, Mary's personal representative will not have to share with A or his estate. The total amount of the *corpus* passing to Mary's personal representative may not, upon the supposition, be determined for more than life in being plus twenty-one years after the testator's death; and of course if there be valid supposition yielding such a conclusion, the limitation cannot stand under the rule. *Pitzel* v. *Schneider*, 216 *Ill.* 87; *Kale's Future Interest* (2d. ed.), § 681; 51 *Harvard Law Rev.* 646, ¶ 18; 51 *Id.* 649, ¶ 24 and *n.* 28; 51 *Id.* 1329. Professor Edward H. Warren reached a contrary opinion in 30 *Cyc.* 1488 *n.* 13, upon the erroneous premise that the class will close at the testator's death if the life taker then had a child twenty-four years of age, thus excluding A in the case supposed. That the class will not close until the death of the life taker, see *Farman* v. *Barrett* (1927), 1 *Ch.* 466; *In re Emmet's Estate*, 13 *Ch. Div.* 484; *Simpson* v. *Spence*, 58 *N. Car.* 208; *Tentative Restatement of Property*, § 296, comment (*L*), § 297,

*illustration No.* 8; 51 *Harvard Law Rev.* 1334; 2 *Simes Future Interests,* § 383; *Kale's Future Interests,* § 570. In *Picken* v. *Mathews,* 10 *Ch. D.* 264, cited by Professor Warren, there was no life estate prior to the gift to children.

I cannot pass unmentioned the rule that generally no limitation can be construed an executory devise if it might be construed a remainder and the companion rule as to the destructibility of contingent remainders. The result of these rules is, for instance, that in a limitation to one for life and on his death to such of his children as reach twenty-four, the limitation to the children must either vest *eo instante* the life estate determines, or fail. Such rules are not applicable where, as here, the gift is in trust. *Gray's Rule Against Perpetuities* (3d ed.), § 325; *Kale's Future Interests,* § 570; 1 *Jarm.* (6th Am. Ed.) *225, *227; *Simonds* v. *Simonds,* 199 *Mass.* 552, 555; *cf. McGill* v. *Trust Company of New Jersey,* 94 *N. J. Eq.* 657, 666 (first quotation from Gray); *cf. Kates* v. *Walker,* 82 *N. J. L.* 157; 82 *Atl. Rep.* 301. Were such rules applicable they would render good under the rule against perpetuities the limitation to the children of Theodore, Jr., and Charles who had attained twenty-four at their fathers' deaths; and any others of their children would be cut off. Further as to these rules which sprang up under other economic conditions, see *Den* v. *Schenck,* 8 *N. J. L.* 29, 42; *Den* v. *Hance,* 11 *Id.* 244, 259; *Restatement of Property,* § 240; *Brackenbury* v. *Gibbons,* 2 *Ch. D.* 417; 19 *Am. Jur.* 558.

I have next to decide the interpretation to be put upon the words "and heirs at law" appearing in the fourth clause of the will. The words stand in contrast to the gifts under the third clause to Anthony, Conrad and George Koellhoffer, each of a sixth of the estate "to have and to hold to them, their heirs and assigns forever."

The only one who can, under the words "and heirs at law," lay a claim meriting mention is the widow of Charles who survived him (the wife of Theodore, Jr., predeceased him). The theory of her claim must be that the word "and" is read conjunctively, the words "heirs at law" read as words of purchase and the pronoun "their" as modifying the words

"heirs at law." On her behalf it may be said that when used as words of purchase with reference to personalty, the words "heirs at law" may be taken to signify the next of kin and to include the widow, entitling her where there are children to the one-third share given a widow under the statute of distributions. *Meeker* v. *Forbes,* 84 *N. J. Eq.* 271; 93 *Atl. Rep.* 887; *affirmed,* 86 *N. J. Eq.* 255; 98 *Atl. Rep.* 1086. But when used as here in a gift to the "children and heirs at law," the words "heirs at law" are quite inapt to refer solely to surviving spouses; and furthermore the *quantum* of the gift (whether a one-third share or a share equal to the share of each child—*Hutton* v. *Hutton,* 120 *N. J. Eq.* 21; 183 *Atl. Rep.* 714) is so undefined as rather to deny the intimation that the testator used the words to express a gift solely to surviving spouses.

Viewing the several conceivable possibilities, I think the most plausible interpretation that may be put upon the words referred to is to read the word "and" disjunctively and the other words as above defined. Thereby the limitation to the heirs at law becomes a substitutional gift to the next of kin of Theodore, Jr., Charles and Mary. In fact all the children of Theodore, Jr., and Charles living at the testator's death or born thereafter, survived their father and attained twenty-four. The substitutional gift therefore will not take effect and need not be considered.

Next it may be concluded summarily that the testator died intestate as to the income that has been accumulating since the death of Theodore, Jr., and Charles upon the shares of which each had had the income. That income will either (a) go by intestacy as undisposed of property, or (b) follow, and therefore fall with, the gifts of *corpus* invalidated by the rule against perpetuities. *Allen* v. *Burkhiser,* 125 *N. J. Eq.* 524, 527; 6 *Atl. Rep.* (2d) 656; *cf. First National Bank of South River* v. *Johnson,* 114 *N. J. Eq.* 616, 618; 169 *Atl. Rep.* 346; and as to the effect of the rule, see *McGill* v. *Trust Company of New Jersey, supra,* 94 *N. J. Eq.* 657, 669.

The final questions here have to do with the law of conversion. The testator left at his death a parcel of land at 37

Thirteenth Avenue, Newark, a parcel at 72-74 Springfield Avenue, Newark, and some personalty. The future interests purported to be created by the fourth clause of the will, in so far as they constitute personalty, will pass in six equal shares to the personal representatives of the testator's five deceased sons and to Mary Blank.

Under the will the executors have power to sell "the whole * * * of my estate" including therefore the future interests going by intestacy. *Morse* v. *Hackensack Savings Bank,* 47 *N. J. Eq.* 279, 283; 20 *Atl. Rep.* 961. From the accounts as to this estate on file in this court, it appears that the parcel on Thirteenth Avenue was sold March 1st, 1920, prior to the death of any of the five sons. The proceeds therefrom pass as personalty to their personal representatives and to Mary Blank. *Meeker* v. *Forbes,* 84 *N. J. Eq.* 271; 93 *Atl. Rep.* 887; *affirmed,* 86 *N. J. Eq.* 255; 98 *Atl. Rep.* 1086; *Keen* v. *Plume,* 82 *N. J. Eq.* 526; 90 *Atl. Rep.* 1027; *affirmed* (at *p.* 645).

Again as shown in the accounts, the parcel at 72-74 Springfield Avenue was sold January 22d, 1922, after the death of George Koellhoffer. A share of the proceeds thereof came into the trust; and a part of the fund on hand is allocable to that share. One-sixth of that part, together with the income allocable thereto since the respective life beneficiaries' death, will pass under George's will to the beneficiaries thereunder taking his real estate. *Trenton Trust, &c., Co.* v. *Moore,* 83 *N. J. Eq.* 584; 91 *Atl. Rep.* 908; *affirmed,* 84 *N. J. Eq.* 194; 93 *Atl. Rep.* 1087. George's will and perhaps the parties concerned under his will (in which case they will be entitled to be heard) are not before the court. The persons taking this one-sixth interest and the amount so allocable to them (if the interested parties cannot agree upon it) may be settled upon further application of counsel. The other five-sixths interest and the income allocable thereto will pass in five equal shares to the personal representatives of the other four sons who died after 1922, and to Mary Blank.

Further from the accounts it appears that property at 66 Springfield Avenue, Newark, was acquired by the trust on

July 1st, 1934, upon foreclosure of a mortgage held in trust; and it was sold by the trustee December 19th, 1941. Under the law—at least as it stood prior to Laws 1887, chapter 20 (now *R. S.* 3:20-3; *N. J. S. A.* 3:20-3)—the portion of the fund on hand allocable to this parcel would pass to Mary Blank; to the personal representatives of Anthony, George and Theodore, Jr., who died prior to 1934; to the devisees of Conrad who died in 1939; and to the heirs of Charles who died in 1936. *Barclay* v. *Cooper,* 42 *N. J. Eq.* 516, 521; 9 *Atl. Rep.* 107; see *Perrine* v. *Vreeland,* 33 *N. J. Eq.* 102, 108; *affirmed* at *p.* 596. There are many loose statements made by courts of other jurisdictions which have had up for consideration the question of whether the proceeds of land acquired by the decedent's administrator upon foreclosure of a mortgage in his hands are taken by the next of kin or heirs *of the decedent.* (The question here is quite different— namely, whether the interest in such land passes to the personal or real representatives *of the decedent's next of kin.*) These statements are broadly that the land is personalty for all purposes of devolution. *Fifield* v. *Sperry,* 20 *N. H.* 338; *Lockman* v. *Reilly,* 94 *N. Y.* 64; *Coombs* v. *Furey,* 225 *Ill.* 61 (cf. the Illinois statute in *Kenny* v. *Keplinger,* 89 *Ill. App.* 570); *Rogers* v. *Rogers,* 101 *Tenn.* 428. The cases are not controlling.

The 1887 statute does not, in my view, upset the ruling of the *Barclay* case, which, it may be remarked, was decided early in 1887. The statute (now *R. S.* 3:20-3; *N. J. S. A.* 3:20-3) provides that the real estate so purchased by the fiduciary shall be "an asset of the estate in his hands." But the word "asset" is not confined to personalty; it has reference commonly to realty subjected to a decedent's debts. *Bouvier's Law Dictionary;* 3 *Wms. on Executors* (*7th Am. Ed.*) 140. *R. S.* 3:20-4; *N. J. S. A.* 3:20-4 merely provides that "The proceeds of a sale and conveyance of real estate pursuant to section 3:20-3 shall be received, accounted for and paid over by the fiduciary in the same manner as he would have been required to do with the proceeds of the mortgage." The word "manner" referring to payment has to do with the procedure of payment; it cannot be said to overturn the pre-

existing law as to who should make up the class of payees. *Cf. Cameron* v. *Crowley, 72 N. J. Eq.* 681; 65 *Atl. Rep.* 875. Nor does the differing language of the three statutes amalgamated by the revisers into *R. S.* 3:20-4; *N. J. S. A.* 3:20-4 lend support to the notion that the realty in the fiduciary's hand is to devolve as personalty. The statutory provisions in other states bearing some resemblance to *R. S.* 3:20-3 and 3:20-4; *N. J. S. A.* 3:20-3 and 3:20-4 (except the Illinois statute), more explicitly provide that the land acquired constitutes personalty. 110 *A. L. R.* 1397.

The portion of the proceeds of the parcel at 66 Springfield Avenue allocable to the devisees and heirs of Conrad and Charles, the income thereon allocable thereto and the persons taking the same can be settled upon further application of counsel. It may be observed now with respect to the matter of the income thereon that the income accruing to the deaths of Conrad and Charles, respectively, will pass to their respective personal representatives, while the income accruing thereafter will go to their respective devisees and heirs.

The property at 230 Norwood Avenue, Deal, which was acquired by the trustee by foreclosure on April 26th, 1940, was sold by him on December 30th, 1940, and, none of the next of kin of Theodore, Sr., having died in the interim while it was realty, the proceeds will pass as personalty.

I have no doubt that Laws 1915, chapter 181 (now *R. S.* 3:26-2; *N. J. S. A.* 3:26-2) amending the statute to permit of "distribution" by a testamentary trustee of estate in his hands, is not to be construed so narrowly as to deny the Orphans Court jurisdiction to direct the passage of the proceeds of real property acquired by the trustee upon foreclosure of a mortgage held in trust, notwithstanding that the proceeds pass as realty. Compare *R. S.* 3:20-4; *N. J. S. A.* 3:20-4.

I will advise a decree in accordance with this opinion.