# IDA MARY LOUD, Appellant, v. ST. LOUIS UNION TRUST COMPANY et al.

### Division One, April 6, 1923.

1. **PERPETUITY: Vesting of Legal Title: Rule.** The rule against perpetuities requires that the legal title must vest in ascertainable persons not later than twenty-one years and ten months after the termination of a life or lives in being at the time the will takes effect.

2. ———: ———: **Possibility and Probability.** It is not enough that, in view of the language of a will, there is a probability that the estate may vest within the time limited by the rule against perpetuities; the rule requires that it must vest, if at all, within the limitation prescribed, beyond a possibility. The test is whether the prescribed contingency, or the event upon the happening of which the legal title is to vest, may not arise until after the time allowed by law within which the gift must take effect. If the limitation is made to depend on an event that may happen immediately after the death of the testator, but which may not occur until after the lapse of the prescribed period within which the legal title must vest, the devise is void.

3. ———: **Equitable Estates.** The rule against perpetuities is equally applicable to both equitable and legal estates or interests.

4. ———: **Intention.** A will or deed creating or attempting to create an estate or interest prohibited by the rule against perpetuities should be construed just as all other deeds and instruments are construed. The intention of the maker is the guiding star to its interpretation, and the words used are to be given their plain, ordinary and common meaning, unless the instrument manifests an intention to use them in their technical sense.

5. ———: **Spendthrift Trust: Future Enjoyment: No Power to Sell or Encumber: No Title to Vest.** The testatrix devised her property to a trustee and provided that certain income therefrom should be paid to her only daughter and grandchildren, and after doing so in a subsequent clause declared that the provision made for them should not be liable for their debts, and that none of them should have any right to give, sell, convey, pledge, encumber or anticipate the income provided for them, and that "no right or title to said income or other provision for any such beneficiary shall vest in him or her until the same shall have been actually paid into his or her hands." *Held*, that the purpose of the testa-

trix, by this clause, was not to fix the time when the daughter and grandchildren should come into the enjoyment of the property, but to fix the time when the title should vest, and no estate or interest vested in the grandchildren at the death of the testatrix.

6. ———: **Contingent Interest.** Where the will specificially provides that the title shall not vest until a particular time it conveys only a contingent interest until that time arrives.

7. ———: ———: **Unborn Child of Daughter: Issue of Grandchildren.** At the time of testatrix's death her only daughter was 54 years of age, and her three grandsons were aged 26, 24 and 18 years respectively. Her will devised her property to a trustee, who was to hold and invest the same and pay to the daughter a designated part of the income during her life, and after her death the income to the three sons, and one-half of the *corpus* of the share of each grandson was to go to him outright when he reached the age of thirty-five years, and the other half when he was forty years old; if either grandson "before receiving all of his share of the principal of said estate shall die leaving issue then surviving, the share of such deceased grandchild shall be held by the trustee for the benefit of such issue, in equal shares, until they, respectively, shall reach the age of twenty-one years, when their respective shares of the principal shall be paid over to them outright." In another clause it was provided that "if any other child shall be born to my said daughter, he or she shall be treated in the same manner as the other three grandchildren above mentioned, and be entitled to the same share of the principal of the trust estate," thereby giving to unborn children the same interest in the trust estate given to the three living grandsons, subject to the same terms and conditions. *Held*, first, that the devise of one-half of the estate meant for each of the three grandsons was contingent until he reached the age of thirty-five years, and the other half until he was forty years of age; *second*, one-half the estate meant for each grandson was further contingent upon his death leaving issue before he reached thirty-five years, and the other half upon his death before his fortieth year leaving issue; *third*, if such issue were born, and their father died before reaching those ages, the vesting of the estate in such issue was postponed until they reached the age of twenty-one years; *fourth*, if another child were born to the daughter, such child would receive a share equal to the other three grandchildren, one-half at the age of thirty-five years and the other half at the age of forty years; *fifth*, if such unborn child died before reaching those years, leaving issue, its share would not vest in such issue until they were twenty-one years old; and *sixth*, said devises would be contingent for a possible period of thirty-two years, as the shortest

and of over a hundred years as the most remote period, and violate the rule against perpetuities, and the will is void.

8. ———: Devise to Unborn Child of Unborn Child: Woman as Devisee. A devise to an unborn child of an unborn child of testatrix's daughter violates the rule against perpetuities, and is void. And in applying the rule, the daughter, whatever her age, is presumed to be capable of bearing children so long as she lives. If it is possible under the will for an unborn child of an unborn child to take the *corpus* of the estate, it is just as void as it would be had a child of the daughter in fact been born.

9. ———: Estoppel: Acceptance of Income. The only daughter of the testatrix, whose will devising property to a trustee, who was required to pay the daughter a designated income during her life, violated the rule against perpetuities, is not estopped from maintaining an action to have the will declared void by the fact that she accepted a portion of the income, even more than was designated, which nevertheless was only a small portion of the estate.

10. ———: Vested Interest: Independent Legacy: Effect on Rest of Will: Res Adjudicata. A provision in the will that "if any of said grandsons shall desire to go into business at any time between the age of twenty-five and thirty-five years, and can satisfy the trustee that he has a reasonable prospect of success in such business, the trustee is authorized to and may advance to him a sum not to exceed ten thousand dollars on account of his portion of the estate" created a present vested interest in the grandsons in the ten thousand dollars, and its enjoyment was made dependent only upon their satisfying the trustee that they were capable of succeeding in business. But the question whether these vested legacies were separate and independent of the general plan and scheme of the trust, or parts and parcels thereof and would have to stand in face of the entire trust otherwise void as violative of the rule against perpetuities, is not decided, because another suit, brought by one of the grandsons to construe that part of the will, decided by the circuit court and unappealed from, and adjudging that this clause created a present vested interest, and in pursuance of which the grandsons received said sums of money, was not *res adjudicata*.

11. ———: Will: Valid in Part: Invalid in Part. Where portions of a will are void as being violative of the rule against perpetuities, and those portions relate to the same property as the valid portions and constitute a part of the general plan or disposition, the valid as well as the invalid portions are void.

12. WILL CONTEST: Counsel Fees. Reasonable counsel fees, both in the trial court and the appellate court, should be allowed to the

trustee in a suit contesting the validity of a complicated will devising property to a trustee, alleged and adjudged to be void as in contravention of the rule against perpetuities.

Appeal from St. Louis City Circuit Court.—*Hon. John W. Ca'houn*, Judge.

REVERSED AND REMANDED (*with directions*).

*Jourdan, Rassieur & Pierce* and *John M. Goodwin* for appellant.

(1) No interest is good unless it must vest, if at all, not later than twenty-one years and ten months after some life or lives in being at the creation of the interest. Gray on Perpetuities (3 Ed.) sec. 201; Koehler v. Rowland, 205 S. W. (Mo.) 220; 30 Cyc. 1467; 21 R. C. L. 282, sec. 2. (a) The rule governs both legal and equitable interests. Gray, Perpetuities (3 Ed.) sec. 202. (b) For the purposes of applying the rule a woman is considered capable of child-bearing so long as she lives. 30 Cyc. 1483, note 90; Gray on Perpetuities (3 Ed.) sec. 215; Rozier v. Graham, 146 Mo. 352; Flora v. Anderson, 67 Fed. 182; In re Dawson, 39 Ch. Div. 155; List v. Rodney, 83 Pa. St. 483. (c) In applying the rule regard is had to possible and not to probable or actual events. 22 Am. & Eng. Ency. Law, p. 707; Shepperd v. Fisher, 206 Mo. 239; Gray on Perpetuities (3 Ed.) sec. 214; 30 Cyc. 1483; Nightingale v. Burrell, 32 Mass. (Pick.) 104; Church v. Grant, 69 Mass. (3 Gray) 142; Sears v. Putnam, 102 Mass. 5; In re Ackerman's Will, 74 N. Y. Supp. 477; Donahue v. McNichol, 61 Pa. (11 P. F. Smith) 73. (d) A will must be construed as if the rule did not exist, and then so construed, the rule must be remorselessly applied. Gray on Perpetuities (3 Ed.) sec. 629; 30 Cyc. 1498; 21 R. C. L. p. 294, sec. 18. (e) This court has had frequent occasion to consider and apply the rule against perpetuities. In many instances wills and conveyances have been invalidated as being in violation of it, while in others the full vigor of the rule has been acknowledged,

but no violation was found. Chism's Adm. v. Williams, 29 Mo. 288; Vaughn v. Guy, 17 Mo. 429; Riley v. Jaeger, 189 S. W. (Mo.) 1168; Bradford v. Blossom, 207 Mo. 177; Shepperd v. Fisher, 206 Mo. 208; Lockridge v. Mace, 109 Mo. 162; Gates v. Seibert, 157 Mo. 254; Deacon v. Trust Co., 271 Mo. 669; State ex rel. v. Hains, 73 Mo. 320; Naylor v. Godman, 109 Mo. 543; Walters v. Dickman, 202 S. W. (Mo.) 109; Koehler v. Rowland, 205 S. W. (Mo.) 217. (2) The interest of the Loud children under the Blanke will are not vested upon the death of testatrix. (a) The will itself specifically provides that no right or title shall vest in any beneficiary until the money or property has been actually received by him or her. (b) It is the duty of the court to give due regard to the directions of the testatrix. R. S. 1919, sec. 555. (c) In the following instances where a testator or grantor has specifically provided that right or title shall not vest until a particular time, the interests have been held contingent until that time, and where the question of remoteness arose, such instruments have been held void as being in violation of the rule against perpetuities. Buxton v. Kroeger, 219 Mo. 244; Eckle v. Ryland, 256 Mo. 424; Emison v. Whittlesey, 55 Mo. 254; Bennett v. Bennett, 217 Ill. 434; Battie-Wightson v. Thomas, 2 L. R. Ch. Div. 95; Rowland v. Tawney, 26 Beavan, 67; In re Morse's Settlement, 21 Beavan, 174; Comport v. Austin, 12 Simons, 218; Griffin v. Blunt, 4 Beavan, 248. (d) Mrs. Blanke created spendthrift trusts and to hold that interest in the Loud children vested in the *corpus* renders the effort to create spendthrift trusts a nullity. Kessner v. Phillips, 189 Mo. 515. (e) When the Blanke will is analyzed in detail it will be found that no direct gift is made to the Loud children in the *corpus* until they each attain the age of thirty-five and forty years. (3) The following cases, upon examination, demonstrate that the interests in the Loud children did not vest upon the death of testatrix: Deacon v. Trust Co., 271 Mo. 669; O'Hara v. Johnston, 113 N. E. (Ill.) 127; Leake v. Robinson, 2 Meriv. 363, 35 Eng. Reprint, 975; Kates v. Walker, 82 Atl. (N. J.) 301; Schu-

knecht v. Schultz, 212 Ill. 43; Pitzel v. Schneider, 216 Ill.
87; In re Kountz's Estate, 62 Atl. (Pa.) 1103; Hewitt v.
Green, 77 Atl. (N. J.) 25; Taylor v. Crosson, 98 Atl.
(Del.) 375; Geisler v. Trust Co., 101 Atl. (Pa.) 797;
Dime Savings & Trust Co. v. Watson, 254 Ill. 419; Gates
v. Seibert, 157 Mo. 254, 268; Bradford v. Blossom, 207
Mo. 177. (4) Even if the interests in the Loud children
be vested yet they are subject to being divested upon
their death prior to receiving their share, at which time
such interest may revest beyond the limits of the rule.
21 R. C. L. pp. 298, 299, sec. 22; Gray on Prepetuities (3
Ed.) secs. 114, 317; Starr v. Methodist Church, 75 Atl.
(Md.) 595; Sears v. Putnam, 102 Mass. 5; Shepperd v.
Fisher, 206 Mo. 239. (5) The gift to a class, upon each
of them attaining a certain age, where at the death of
the testatrix no member of that class is of the prescribed
age and it is possible that other persons may be born in-
to the class, is barred for remoteness. 30 Cyc. 1485-
1490; Gray on Perpetuities (3 Ed.) secs. 369, 372, 376.
(6) Appellant is not estopped from bringing this action.
(a) By her acceptance of a portion of the income, which
is a small part of all the property belonging to her, she
has done nothing to the prejudice of the respondent
Trust Company. (b) The rule of perpetuities is a man-
date of the law, which declares void any interest created
in contravention thereof. It is, therefore, impossible for
parties, by agreement or conduct, to make legal that
which is void. In re Schaefer's Estate, 180 N. Y. Supp.
638; Carrier v. Carrier, 123 N. E. (N. Y.) 135. (c) Where
a beneficiary has accepted benefits under a will he is not
thereby estopped from insisting upon a due interpreta-
tion of the instrument and that its provisions violate the
rule against perpetuities. In re Walkerly's Estate, 41
Pac. (Cal.) 772; Schuknecht v. Schultz, 212 Ill. 43. (7)
Upon the effect of the decree construing paragraph five
of item fourth (c) in the Archibald Loud case. (a) The
conduct of appellant in that case can only mean that she
consented to a payment to her son out of this fund, which
was all her own. (b) The question of whether Items

Fourth, Fifth, Sixth and Seventh of the Blanke will violated the rule against perpetuities was not determined in the above action, and could not have been determined by reason of the lack of the necessary parties. (c) The law is well settled that a judgment or decree in an action is only conclusive and operates as an estoppel as to the issue actually litigated and determined. 15 R. C. L. p. 973, sec. 450. (d) It has been ruled that where the subsequent action is upon a different claim, a judgment in a former case is only conclusive and only bars those issues which were actually tried. Garland v. Smith, 164 Mo. 222; LaRue v. Kempf, 171 S. W. 592. (e) Pleadings are the foundation for a judgment, and the court has no jurisdiction to determine the interests of parties to a legal controversy where such a determination of their interests is not embraced within the pleadings. Charles v. White, 214 Mo. 187. (8) Where portions of a will are void as being in contravention of the rule against perpetuities and these portions relate to the same property and constitute a part of one general plan of disposition, the valid as well as the invalid provisions will fall. Lockridge v. Mace, 109 Mo. 162; Shepperd v. Fisher, 206 Mo. 208. (9) Item Seventh relates to the same property and is part of the plan creating the trust, and even though standing alone it be valid, it must fall with the invalid provisions. Lockridge v. Mace, 109 Mo. 162; Shepperd v. Fisher, 206 Mo. 208. (10) Since the trust created by the Blanke will is void, the respondent Trust Company is not entitled to any allowance for attorney's fees and costs incurred in this case in its efforts to maintain the integrity of a void instrument. Bailey v. Buffalo Loan Co., 108 N. E. (N. Y.) 561. Appellant should not be called upon to pay the Trust Company's expenses in defending a void instrument, which it prepared itself.

*Bryan, Williams & Cave* for respondent.

(1) It is the duty of courts to construe wills so as to carry out as far as possible the intention of the testatrix,

rather than to defeat such intention, particularly when the rule that threatens is harsh in its application. Gray on Perpetuities (3 Ed.) secs. 632, 633; James Estate, 245 Pa. St. 127. (2) Where there is a valid limitation, and then in a later part of the instrument there is a clause which modifies the limitation already made, which modification might make it too remote, the modifying clause will be rejected altogether. 30 Cyc. 1499; Gray on Perpetuities (3 Ed.) sec. 233. (3) The rule against perpetuities has no application to vested interests or to interests which will vest within the period of a life and lives in being and twenty-one years thereafter. Gray on Perpetuities (3 Ed.) secs. 205, 206, 232. (4) The law favors the vesting of interests and estates, and in the absence of words expressing a clear intent to the contrary, an estate will be construed as vested rather than contingent—a vested interest rather than an executory or future interest—and, consistently with the testator's intention, the estate will be construed to vest at the earliest possible time, so that, unless otherwise clearly expressed, it will vest immediately upon the testator's death. Deacon v. Trust Co., 271 Mo. 669; Collier's Will, 40 Mo. 287; Jones v. Waters, 17 Mo. 587. (5) The interest of each of the grandchildren who are named in the will was a vested interest in each of them immediately upon the death of the testatrix. Deacon v. Trust Co., 271 Mo. 669; Collier's Will, 40 Mo. 287; Tindall v. Tindall, 167 Mo. 218; Rodney v. Landau, 104 Mo. 257; Chew v. Keller, 100 Mo. 362; Waddell v. Waddell, 99 Mo. 343. (a) While, as we will show later, the limitation to Archibald, Harold and August by name is not a limitation to them as members of a class, yet, whether it be treated as a limitation to a class or not, nevertheless their respective interests became vested immediately upon the death of the testatrix. Doe v. Considine, 6 Wall. 475; McArthur v. Scott, 113 U. S. 380; Barkhoefer v. Barkhoefer, 204 S. W. 906; Buckner v. Buckner, 255 Mo. 371; Thomas v. Thomas, 149 Mo. 426. (b) The gift in the will to Archibald, Harold and August was a direct and inde-

pendent gift to each of them by name of an equitable estate. It was not merely through the medium of directions to the trustee, and no action on the part of the trustee was a condition precedent to the vesting of the estate in them. Collier's Will, 40 Mo. 287; Deacon v. Trust Co., 271 Mo. 669. (c) The fact that throughout the will the testatrix treats the grandchildren as having "shares" shows that the interests of the grandchildren were vested interests. In re Turney, 2 L. R. Chan. (1899) 739; Torrey v. Shaw, 3 Edw. Ch. 356; Minot v. Purrington, 190 Mass. 336. (d) The gift to each grandchild of the income from his share for his maintenance prior to the time of arriving at majority, and of the entire net income on his share after arriving at majority, is conclusive that the gift of the *corpus* of his share is not contingent upon him attaining the specified age, but is vested at the death of the testatrix. Hawkins on Wills, 225, 227; Paxon's Estate, 241 Pa. St. 452, L. R. A. 1915 C, 1009 (also note 1915 C, p. 1036 et seq.); Fox v. Fox, L. R. 19 Eq. 286; Hospital Trust Co. v. Noyes, 26 R. I. 323; Safe Deposit Co. v. Wood, 201 Pa. 420; Gairdner v. Gairdner, 1 Ont. Rep. 184; Wilson v. Knox, Ir. L. R. 13, Ch. Div. 349; Harrison v. Grimwood, 12 Beav. 192; Cropley v. Cooper, 19 Wall. 174; Gossling v. Elcock, 1 Ch. L. R. (1903) 448; Warner v. Durant, 76 N. Y. 136. (e) The provision for the advancement of $10,000 of the *corpus* to each of Archibald, Harold and August shows that the interest of each was vested. Everitt v. Everitt, 29 N. Y. 39; Goebel v. Wolff, 113 N. Y. 405; Torrey v. Shaw, 3 Edw. Chan. 356; Kelly v. Dike, 8 R. I. 436; Fonereau v. Fonereau, 3 Atk. 645; Harrison v. Grimwood, 12 Beav. 192; Vivian v. Mills, 8 L. J. Chan. 239; Claflin v. Claflin, 149 Mass. 19. (f) The provision in the fifth clause that if a grandchild died before attaining thirty-five, his interest would pass to his issue, shows that each grandchild's interest was treated by the testatrix as vested. Leeming v. Sherratt, 2 Hare, 14. (g) The fact that in the second paragraph of the fifth clause of the will, there was a provision that if a grandchild dies leaving no issue

surviving him, his share should go to the surviving grandchildren or issue of deceased grandchildren, shows that the testatrix considered that there was a share vested in each grandchild; for if it were a limitation to a class composed only of those who arrived at thirty-five years, any provision for survivorship would be superfluous. In re Bartholomew's Trust, 19 L. J. Ch. (N. S.) 237; Weatherell v. Weatherell, 1 De G. J. & S. 134. (h) The fact that the interest of each grandson, was an equitable interest until he attained thirty-five years, and that possession of their estate was postponed until that time does not postpone the vesting of their interest until that time. Gates v. Seibert, 157 Mo. 254; Deacon v. Trust Co., 271 Mo. 669; Collier's Will, 40 Mo. 287; Hardcastle v. Hardcastle, 7 L. T. (N. S.) 503; Williams v. Williams, 1 Chancery L. R. (1907) 180; Turney v. Turney, 2 Ch. L. Rep. (1899) 739; Taylor v. Stephens, 165 Ind. 200; Connolly v. O'Brien, 166 N. Y. 406. (i) The fact that the possession of the estate is postponed only during the existence of the trust shows that the postponement does not relate to the vesting of the interest, but merely to the legal title and possession. Ordway v. Dow, 55 N. H. 11; Pearson v. Dolman, L. R. 3 Eq. Cas. 314. (j) It is clear also that the language of the sixth paragraph of the will relates only to the legal title and possession and does not mean that the equitable interests of Archibald, Harold and August are not vested interests. Turney v. Turney, 2 Ch. L. Rep. (1899) 739; Barnet v. Barnet, 29 Beav. 239; Simpson v. Peach, L. R. 16 Eq. 208; Johnson v. Valentine, 4 Sandf. 36; Taylor v. Frobisher, 5 De G. & S. 191; McLachlan v. Tait, 28 Beav. 407; Jacobs v. Whitney, 205 Mass. 477; Ogden v. Ogden, 82 N. Y. Supp. 710; Edmondson's Estate, L. R. 5 Eq. 389. (6) The circuit court in another case in which the appellant herein and her three sons were parties, has heretofore adjudicated that each of the said sons was entitled to the sum of $10,000 "on account of his portion of the estate," and each of said sons has received the said sum of $10,000. This adjudication could only have been made on the theory that

their interests were vested interests, and is *res adjudicata* on that proposition. Case v. Sipes, 147 Mo. 110; Donnell v. Wright, 147 Mo. 641; Nave v. Adams, 107 Mo. 414; 24 Am. & Eng. Ency. Law (2 Ed.) 733; 23 Cyc. 1302, 1306, 1308. (7) Even if it were held that the estate to Archibald does not vest until he shall have arrived at the age of thirty-five years, it would not violate the rule against perpetuities, since the happening or non-happening of his arrival at the age of thirty-five years would, because of his age at the time of the testatrix's death, necessarily be within twenty-one years after such death. The same is true with respect to Harold and August. (8) The limitation in the fifth section to the issue of Archibald, in the event he should die before attaining thirty-five leaving issue is valid, since, as Archibald was living at the time of the death of the testatrix, the event in which it was to go to his issue must take place within the period of a life in being. This same is true, of course, with respect to Harold and August. (9) The limitation as to what should happen in the event a grandchild should die without leaving issue was a separate and alternative limitation—not a gift subsequent to or in succession to the issue of grandchildren of the testatrix, but to take effect only in the alternative that a grandchild should die leaving no issue,—and even if the limitation made in the event that a grandchild died without leaving issue were too remote, it would not affect the limitation to take effect in the event that the grandchild died leaving issue. 2 Underhill on Wills, sec. 896, p. 1372; 21 R. C. L. 300, sec. 24; Perkins v. Fisher, 59 Fed. 801. (10) Even if it were treated as a subsequent limitation and were void, the better authorities hold that it would not affect prior limitations to Archibald, Harold and August. Gray on Perpetuities (3 Ed.) secs. 247, 249a; Allen v. Almy, Am. & Eng. Ann. Cas. 1917 B, 112; Saxton v. Weber, 20 L. R. A. 509; Deacon v. Trust Co., 271 Mo. 669; Tiers v. Tiers, 98 N. Y. 572. (11) The consent of the children of Mrs. Loud that the trust in Mrs. Blanke's will may be set aside cannot justify holding the trust invalid. Shel-

ton v. King, 229 U. S. 90; Newton v. Rebenack, 90 Mo. App. 650; Murphy v. Delano, 55 L. R. A. 727, 95 Me. 229; Rife v. Geyer, 59 Pa. St. 393. Particularly is this true when each of the children of Mrs. Loud has received $10,000 and other benefits under the terms of the will and has thereby accepted the benefits of the trust. (12) The allowance of counsel fees was reasonable and proper. McFarland v. Bishop, 282 Mo. 534.

WOODSON, J.—This suit was brought in the Circuit Court of the City of St. Louis, by the plaintiff against the defendants, to have declared void a trust created by the will of Mary Jane Blanke, deceased, the contention being that it violates the rule (instead of the statute, as I have inadvertently stated in former opinions written on this subject) against perpetuities, and for collateral relief incident thereto.

There is no controversy over the facts of the case; while they are not agreed to, yet they are not disputed. They are stated by counsel for plaintiff substantially in the following language:

Mary Jane Blanke died in St. Louis on the 12th day of May, 1914. At her death she was the owner of several pieces of real estate, located in said city, and a large amount of personal property. The value of her personal estate alone aggregated more than eight hundred thousand dollars. It consisted of secured notes, stocks, municipal and corporate bonds, certificate of deposit and cash in bank. At the time of the trial of this cause in the lower court, on March 17, 1920, the personal estate had greatly increased in value.

At her death, Mary Jane Blanke left surviving her the appellant, Ida Mary Loud, who was her only child and her sole heir at law. At the death of Mrs. Blanke, Mary Loud had three children, i. e.: Archibald Chester Loud, who was then twenty-six years old plus, Harold Lester Loud, who was then twenty-four years old plus, and August Blanke Loud, who was then eighteen years old plus. At said time the husband of plaintiff and the

father of said children was still alive, and he was living at the date of the trial of this cause in the lower court. Mrs. Loud's age at Mrs. Blanke's death was approximately fifty-four years.

In addition to the above, Mary Jane Blanke left at her death, as her only relatives, a brother, Joseph B. Farmer, and said Joseph B. Farmer, at the date of the institution of this action, had, as his only living descendants, Percy Farmer, Clarence Farmer, Eva Cleage, Ruth Wackman and May Farmer.

Mary Jane Blanke left a will which was duly admitted to probate by the Probate Court of the City of St. Louis, on the 23rd day of May, 1914, which said will (omitting attestation) was as follows:

"I, Mary Jane Blanke, widow of the late August H. Blanke, of the city of St. Louis, and State of Missouri, do make, publish and declare this as and for my last will and testament, hereby revoking any and all former wills made by me, that is to say:

"First:

"I authorize and direct my executor, hereinafter named, to pay out of my estate, as soon as may be after my death, all my just debts and funeral expenses.

"Second:

"I give and devise unto my only child, my daughter, Ida Mary Loud, for and during her natural life, my residence in the said city of St. Louis, known as number 3219 Russell Avenue, and the ground upon which the same is situated, being lots numbers four (4), five (5) and six (6), in block number thirteen hundred and two (1302), of the said city of St. Louis, fronting one hundred and thirty-two feet and six inches (132' 6") on the north line of Russell Avenue, by a depth of one hundred and twenty-five feet (125') to an alley.

"And I hereby give and bequeath, absolutely, unto my said daughter, all my household and kitchen furniture, ornaments, and equipment, including silverware, musical instruments, books and pictures, which, at the

time of my death, may be in or appurtenant to my said residence or the premises above described.

"Third:

"(a)   I give and devise unto my grandson, Archibald Chester Loud, the dwelling house known as number 1930 Virginia Avenue, in the said city of St. Louis, and the forty feet (40') of ground upon which the said house now stands.

"(b)   I give and devise unto my grandson, Harold Lester Loud, the dwelling house known as number 1921 Virginia Avenue, in said city of St. Louis, and the forty feet (40') of ground upon which the said house now stands.

"(c)   I give and devise unto my grandson, August Blanke Loud, the forty feet (40') of ground fronting on the east line of Virginia Avenue, in the said city of St. Louis, contiguous to and south of the lot upon which the said house number 1930 Virginia Avenue now stands; *provided*, however, and said three devisees are made subject to the condition, that until each of my said grandsons shall have married or shall have reached the age of thirty years, whichever may first occur, his mother my said daughter, Ida Mary Loud, shall be permitted to enjoy and receive the rents and profits from said property so devised to him upon payment by her of all the taxes, insurance and other charges against the land and the improvements thereon; but if she shall die before the marriage of such grandson or his arrival at the age of thirty years, the said devisees shall thereupon enter at once upon the enjoyments of said land and improvements.

"(d)   In order to equalize the foregoing devises to my said three grandsons, I give and bequeath unto my executor hereinafter named, the sum of seventy-five hundred dollars ($7500), which shall be held by it as trustee for my said grandson, August Blanke Loud, until he shall either have married or reached the age of thirty years, in which event first occurring it shall pay over to him the said sum, with the increment thereto, after having de-

ducted, from time to time, from the income derived from the said seventy-five hundred dollars ($7500) the amount of taxes upon said lots devised as aforesaid to my said last-named grandson; and pending such payment said executor shall have the same powers of investment, sale and reinvestment with reference to the said fund as are given hereinafter to the trustee hereunder with respect to my residuary estate.

"Fourth:

"All the rest and residue of my estate, of every nature whatsoever and wheresoever situate, of which, at the time of my death, I may be seized or possessed, or to which I may be in anywise entitled, including the remainder of the real estate above described, I give, devise and bequeath unto the St. Louis Union Trust Company, a Missouri corporation, and unto its successors and assigns, as trustee, however, for the uses and purposes, upon the terms and conditions, and with the powers and duties hereinafter stated, to-wit:

"(a) The trustee shall have power, at any time and from time to time, to sell any of the trust property or estate, for such price or prices and upon such terms and conditions as it may determine. Any money coming into its hands as the proceeds of any such sale or otherwise, and forming a part of the principal of said trust estate, shall be forthwith invested by it. In making such investments the trustee is given full power to purchase any property, real or personal, which it may think desirable to acquire and hold as part of the said trust estate.

"(b) Said trustee shall pay out of the income and revenue accruing from said trust estate all expenses necessarily or properly incident to its care, preservation or management, and all other reasonable or necessary charges incident to the administration of the trust created hereby, and out of the remaining income and revenue, so long as my said daughter and the latter's husband shall live, said trustee shall pay to her annually the sum of two thousand dollars ($2000) in equal quarterly

installments; and, if, during the lifetime of my said daughter, her husband shall die, it shall pay to her annually thereafter, until her death, the sum of four thousand dollars ($4000), in equal quarterly installments, if said revenue shall equal or exceed said last-named amount; provided, that said trustee shall have the power during the lifetime of my said daughter, in its discretion, from time to time, to increase the said allowance so provided for her whenever it may believe it to be to the interests of my said daughter to have such increased allowance —having in view, however, my desire that my said daughter shall live modestly, and not wastefully or extravagantly, and being guided by its belief of what I would do under the same circumstances, if living.

"Any income not distributed as hereinabove provided shall be added to the principal of the trust estate.

"The foregoing provision for my said daughter shall be for her sole and separate use, free from all statutory and marital rights of her husband, and free from her debts and without the right on her part to assign, hypothecate or anticipate the said income, as hereinafter specially provided.

(c)  I have now living the following grandchildren, sons of my said daughter, namely, Archibald Chester Loud, who was born on December 26th, 1887; Harold Lester Loud, who was born on August 28th, 1889, and August Blanke Loud, who was born on April 14th, 1896.

"After the death of my said daughter said trustee shall hold the said trust estate, and the net income accruing therefrom, for the equal benefit of my said grandchildren and, from time to time, shall appropriate and pay out of said net income such sums as it may deem reasonably necessary or for the best interests of my said grandchildren to appropriate and use for their maintenance and education during minority. Such sums may be paid over to the guardian of the person of such grandchildren or may be paid direct to them by the trustee, in its discretion.

"If any other child shall be born to my said daughter,

he or she, as the case may be, shall be treated under this provision of my will in the same manner as the other three grandchildren above mentioned, and be entitled to the same share of the income and, ultimately, to the same share of the principal of the trust estate as the latter.

"After each of said grandchildren shall have reached the age of majority, said trustee shall, from time to time, appropriate and pay to him, out of the net revenue from said trust estate, such an amount, not exceeding his share of said net income as said trustee may think a proper and reasonable allowance for him, considering the size of the estate and his necessities, having in mind that it is my earnest hope and desire that my grandchildren shall be brought up in habits of frugality, industry and moral worth, so that they shall be good and useful citizens, accustomed to work and able to earn their own living. Said allowance may, from time to time, be increased or decreased by the trustee, according to the condition of the estate and its judgment as to the best interests of such grandchildren.

"If any of my said grandsons shall desire to go into business at any time between the age of twenty-five and thirty-five years, and can satisfy the trustee that he has a reasonable prospect of success in such business, the trustee is authorized to and may advance to him a sum not to exceed ten thousand dollars ($10,000) on account of his portion of the estate. This provision shall apply to each of my said three grandsons.

"When each of such grandchildren shall have reached the age of thirty-five years, he shall receive out and out, freed from the conditions of said trust, one-half ($\frac{1}{2}$) of his share of the principal of said trust fund; and when he shall have reached the age of forty years, the remaining one-half of the principal of said trust estate shall be turned over to him outright.

"Fifth:

"If any of my grandchildren, before receiving all of his share of the principal of said trustee estate, shall die leaving issue then surviving, the share of such deceased

grandchildren shall be held by said trustee for the benefit of such issue, in equal shares, until they, respectively, shall reach the age of twenty-one years, when their respective shares of the principal shall be paid over to them outright.

"If any such grandchild shall die without leaving issue surviving him, his share shall be equally divided, *per stirpes,* among the other surviving grandchildren and the issue of deceased grandchildren, if any; *provided* that the shares shall be paid over to such grandchildren and the issue of deceased grandchildren at once or held by the trustee for their benefit and subject to all the conditions hereof, according to their respective ages, as hereinabove stated and fixed for the purpose of determining the distribution of principal to them, respectively.

## "Sixth:

"The provisions hereinabove made for my said daughter and grandchildren shall not be liable, respectively, for any of their debts or to be used or taken under any writ or process issuing out of any court of law or equity in aid of any creditor or for the enforcement of any decree or judgment against any of them; and neither my said daughter nor any of my said grandchildren shall have the right to give, sell, grant, assign, convey, pledge, hypothecate, or otherwise alien, encumber, or anticipate the income hereinabove provided for them, or any of them, or the principal of said trust estate, or any installment of income; and any act on the part of any such beneficiary attempting to so sell, give, grant, assign, convey, pledge, hypothecate, or otherwise alien, encumber or anticipate the same shall be void and of no effect. And no right or title to said income or other provision for any such beneficiary shall vest in him or her until the same shall have been actually paid into his or her hands.

## "Seventh:

"If, in the event of the death of the said Ida Mary Loud, there shall be no surviving child or other descend-

ants of hers then living, the trust estate in the hands of said trustee shall be divided, equally, *per stirpes*; among the persons who may then be my heirs at law.

"Eighth:

"I hereby nominate and appoint the said St. Louis Union Trust Company to be the executor of this my last will and testament.

"In testimony whereof, I have hereunto set my hand and seal, in the said city of St. Louis, this 25th day of May, nineteen hundred and ten.

"MARY J. BLANKE. (Seal)."

This will was prepared by the defendant Trust Company for Mrs. Blanke. Letters testamentary were duly issued to the Trust Company and her estate was duly and finally administered. Upon final distribution substantially the entire estate, with the exception of four pieces of real property, the household and kitchen furniture and costs of administration, was distributed to the Trust Company as trustee under the provisions of Items Fourth, Fifth, Sixth and Seventh of said will. Since said time, said trustee has been handling said property as trustee under said will.

This action was instituted on the 16th day of January, 1920, by Ida Mary Loud. Her claim is that the trust created under said will is void for the reason that it contravenes the rule against perpetuities, and that she, as the sole heir of her mother, Mary Jane Blanke, takes all of said property under the statutes of descent and distribution, and is the absolute owner thereof and is entitled to the possession thereof as against the St. Louis Union Trust Company, the alleged trustee. For the time the Trust Company has managed this property, the appellant claims an accounting and prays for such other collateral orders and relief in the premises as shall be meet and proper.

In addition to the St. Louis Union Trust Company, the appellant made all of her own children and Joseph B. Farmer and his descendants parties defendant, both

as representing themselves individually and the respective classes to which they belong.

The children of the plaintiff and Joseph B. Farmer, as descendants, filed no formal pleading, but did file their consent, in writing, agreeing and requesting the court to construe the will of Mary Jane Blanke, and consented that it could be adjudged that said will was void and that plaintiff was entitled to the property in the trust, and an accounting, etc. The defendants who are descendants of Joseph B. Farmer, although served and having entered their appearance in the cause, filed no pleadings and took no part in the controversy.

The defendant St. Louis Union Trust Company made the only contest. By second amended answer filed after submission of the cause, this defendant substantially admitted the facts as pleaded, but averred:

(a) That the will in question and the portions thereof assailed did not violate the rule against perpetuities.

(b) That acting with the consent and at the request of plaintiff it, as trustee, had paid out funds of the trust estate as provided for in Section 4, sub-division (c), of said will.

(c) That at the February Term, 1916, of the Circuit Court of the City of St. Louis in an action entitled, Archibald Chester Loud v. St. Louis Union Trust Company et al, number 98087a, wherein Ida Mary Loud was a party defendant, it was duly and finally adjudged that defendants, Archibald Chester Loud, Harold Lester Loud and August Blanke Loud, were entitled to equitable vested interests in the *corpus* of said trust estate, and that the provisions of said will of Mary Jane Blanke contained in the Fourth, Fifth, Sixth and Seventh paragraphs were valid and binding and that plaintiff was not entitled to the property in said trust estate, and that the provisions of said will were binding upon it as trustee and that said trust was a valid trust.

(d) That Item Seventh of said will of Mary Jane Blanke constitutes an alternative gift to the testatrix's heirs at law in the event Ida Mary Loud should die with-

out children or descendants, and that this fact alone is enough to sustain the will until the death of Ida Mary Loud.

In addition to the above facts it appeared in evidence that after defendant Trust Company took charge as trustee, out of the income derived therefrom from time to time, it increased Mrs. Loud's allowance from two thousand dollars a year to about twelve thousand dollars a year, and during a greater portion of the time has been paying to each of her sons an allowance of approximately two hundred dollars a month. There is no authority for the payment of the allowances to these sons, but it was paid to them with Mrs. Loud's consent and charged to her as part of an allowance to her. The other defendants have never consented to any of these payments.

Archibald Chester Loud was twenty-six years old plus when Mrs. Blanke died. Some time before October, 1915, he made a claim to the Trust Company that he was between the age of 25 and 35 years, and that he had a reasonable prospect of success in business, and he demanded an advancement to him of ten thousand dollars under the next to the last paragraph of Item Fourth (c). The Trust Company contended that this clause was only effective after the death of Mrs. Loud, his mother. As a result, Archibald C. Loud filed a suit to the October term, 1915, of the St. Louis Circuit Court, setting up the difference in views existing between himself and the Trust Company, as to when this sum was payable, and prayed construction of this particular clause of the will. No other relief was sought, and this was the only question presented in said action for determination. The Trust Company, Mrs. Loud and her other two sons were made defendants. Joseph B. Farmer and his descendants were not made parties. Mrs. Loud and her two sons, as defendants, made no contest on the issue presented. As a result a decree was entered in favor of Archibald C. Loud, adjudging that this legacy of ten thousand dollars was payable even before the death of Ida M. Loud, so long as the beneficiary had met the other conditions of the bequest. Thereupon, in writing, Mrs. Loud consented

to the payment of this legacy to her son, Archibald, and it was paid him.

The decree below adjudged the will of Mary Jane Blanke to be valid and the trust therein created to be a valid and binding trust, and plaintiff's petition was dismissed.

In the decree the Trust Company was allowed the sum of fifteen thousand dollars for services of counsel in the trial of this cause in the lower court. It was also allowed the sum of $129.50 to cover costs of printing its brief in this case in the lower court.

A trial was had before the circuit court, which resulted in a finding for the defendants, and a decree accordingly, sustaining the trust, and after moving unsuccessfully for a new trial, counsel for the plaintiff in due time and proper form appealed the cause to this court.

Counsel for the respective parties have with much learning and great industry prepared their briefs, and besides citing practically all the authorities bearing upon the subject in this State, have cited more than a hundred from other states and England. This labor of counsel has imposed an unusual amount of extra work upon the writer of this opinion, more than twice as much had the authorities been confined to this and adjacent states, and after having examined them with much care, I find there is but little contained in them that is not found in our own decisions.

This question had been the subject of much litigation in this State, and extends over a great period of time and covers practically every phase of the question that has been treated by other courts. I will therefore view the case largely in the light of our own decisions.

I. This will is quite lengthy, and even a casual reading will show that it is very complicated, and by reading the briefs and arguments of counsel for the respective parties, it will be seen that they have omitted the presentation of no question applicable to this case; if so I have been un-

**Rule Against Perpetuities.**

able to discover it, and I am satisfied that if such omission exists, it was the result of inadvertence, or oversight, not intentionally done.

We will now approach the propositions presented for determination.

A perpetuity may be substantially defined as "a future limitation, whether executory or by way of remainder, and of either real or personal property, which is not to vest until after the expiration of, or will not necessarily vest within, the period fixed and prescribed by law for the creation of future estates and interests, and which is not destructible by the persons for the time being entitled to the property subject to the future limitation, except with the concurrence of the individual interested under that limitation." [22 Am. & Eng. Ency. Law (2 Ed.) p. 703, sec. 1, and cases cited under note 6, especially Hillyard v. Miller, 10 Pa. St. 334.]

And it may not be out of place to state that "the rule against perpetuities has been gradually established by judicial decisions. It is not of feudal origin, but has its support in the practical needs of modern times, which became apparent as soon as executory limitations were permitted, and the courts fixed the rule probably by analogy to the common law rule, which forbade the limitation of a contingent remainder upon a remote possibility." [22 Am. & Eng. Ency. Law (2 Ed.) p. 704, sec. 1 and cases cited.]

Learned counsel for plaintiff has stated the rule against perpetuities in a clear and forceful way in these words: "No interest is good unless it must vest, if at all, not later than twenty-one years and ten months after (the termination of a) life or lives in being at the (time) of the creation of the interest." And they cite the following authorities in support thereof: Gray, Perpetuities (3 Ed.) sec. 201; Koehler v. Rowland, 205 S. W. 217, l. c. 220; 30 Cyc. p. 1467; 21 R. C. L. p. 282, sec. 2.

It may be useless to add that the rule is equally applicable to both legal and equitable interests, or estates. [Gray, Perpetuities (3 Ed.) sec. 202.]

And in applying the rule it should not be forgotten that a woman is legally presumed to be capable of bearing children so long as she lives. [30 Cyc. 1483, note 90; Gray, Perpetuities (3 Ed.) sec. 215; Rozier v. Graham, 146 Mo. 352; Flora v. Anderson, 67 Fed. 182; In re Dawson, 39 Law Rep. (Ch. Div.) 155; List v. Rodney, 83 Pa. St. 483.]

It is also one of the elements of this rule that the interest or estate must vest, if at all, within the limitation prescribed, beyond a possibility, and not a probability, that it may vest within the prescribed time. [22 Am. & Eng. Enc. Law, 707; Shepperd v. Fisher, 206 Mo. l. c. 239; Gray, Perpetuities (3 Ed.) sec. 214; 30 Cyc. p. 1483; Nightingale v. Burrell, 32 Mass. (15 Pick.) 104; Church v. Grant, 69 Mass. 142; Sears v. Putman, 102 Mass. 5; In re Ackermann's Will, 74 N. Y. Supp. 477; Donohue v. McNichol, 61 Pa. 73.]

Nor should it be overlooked, in the construction of a will or deed creating or attempting to create an interest or estate prohibited by the rule against perpetuities, that it should be construed just as all other deeds and instruments are construed. The real intention of the parties to the same as shown by the entire instrument should be the guiding star to its interpretation and the words of the instrument should be given their plain, ordinary and common meaning, unless the intention manifested is clearly to the contrary. [Sec. 555, R. S. 1919; Buxton v. Kroeger, 219 Mo. 224, l. c. 244-45; Deacon v. Trust Co., 271 Mo. 669; Sanitarium v. McCune, 112 Mo. App. 332.]

But if technical words are used in a will, the testatrix or testator is presumed to have used them in their technical sense. [Drake v. Crane, 127 Mo. 85, l. c. 103.]

Having thus defined the rule against perpetuities, shown its limitations, elements and purposes, we will in the next paragraph consider the first real contention made.

II. It is first contended by counsel for appellant, that the interest or estate of the Loud children, accord-

ing to the terms of the Blanke will, did not vest in them at the time of the death of the testatrix.  The ground of this contention is based upon the last clause of paragraph 6 of the will.  It reads as follows: "And no right or title to said income or other provision for any such beneficiary shall vest in him or her until the same shall have been actually paid into his or her hands."

*Contingent Fee.*

The words of this clause seem to me to be perfectly clear and unambiguous, if considered in the light of the rules of construction before stated; but counsel for respondents contend that their interest, according to the terms of the will, vested in each of them immediately upon the death of the testatrix; and we are cited to the following decisions of this court in support of that contention.  [Deacon v. Trust Co., 271 Mo. 669; Collier's Will, 40 Mo. 287; Tindall v. Tindall, 167 Mo. 218; Rodney v. Landau, 104 Mo. 251, l. c. 257; Chew v. Keller, 100 Mo. 362; Waddell v. Waddell, 99 Mo. 338, l. c. 343.]

The first case referred to was a suit to construe the will of Lily Lambert.  The particular matter held in judgment was whether the trust created by terms of the will violated the rule against perpetuities.  The substance of the case in so far as is here material, was as follows:  The property devised consisted of stocks in a corporation engaged in the manufacture of a lotion, then of limited value, but believed by the testatrix to have a great and profitable future.  She therefore devised the stocks to a trustee for thirty years to be administered, the net profits thereof to be used annually for the education and maintenance of all of her children, six in number, the oldest fourteen, and one unborn.  At the end of the thirty years the stocks were to be distributed equally among the children, or the descendants of any of them who might die, and if any of them died without descendants, then to the others or their descendants.  This court held, and properly so, in my opinion, that the will created a present vested estate in the children.  But the enjoyment of the *corpus* of the estate was withheld from them for the thirty years for the benefit of the estate,

and not for the purpose of preventing it from immediately vesting. This case does not sustain the contention made by counsel for respondents.

In the Collier Will Case, the testator by the 17th clause of his will devised and bequeathed the residue of his estate to a trustee (who was also appointed executor) in trust for the uses and purposes therein specified. He then adds: ''And when my son Dwight shall attain the age of twenty-one years, I wish and require my executors and trustees immediately to settle my estate, and divide the same out among my said children as hereinafter to be mentioned. . . . The shares or portions of my estate which shall be thus set apart to my children shall be held by them in their own several rights under the full and perfect legal title to them and to their heirs,'' etc. All the children named in the said clause of the will survived the testator, but Harry, the youngest, an infant, and George, Jr., an adult, died afterwards and before the son Dwight became of age. George, Jr., died testate, leaving a wife, but no children. On petition filed in the circuit court by the trustees praying for advice and directions, the court held that George Jr., and Harry took vested and transmissible estates under the will. I am unable to see what application this case' has to the case at bar, as there is no attempt to, or language used in the will which remotely lends color to the contention that the vesting of the estate devised was to be postponed beyond the life or the lives of persons in being and twenty-one years and nine months thereafter.

In the Tindall Case the deed conveyed land to the daughter, ''for and during her natural life and then to the issue of her body forever, but not to be in any manner subject to the disposition of her husband, and in case she shall depart this life without issue living at her death, then said land to descend to her heirs at law, and not to her said husband or his heirs.'' And the habendum was: ''Unto her the said Lusina and to her sole use and benefit for and during her natural life, and to the issue of her body forever after.'' Under that state of facts this court

held that the deed created in the daughter a separate estate in fee simple, in the event that she had no issue; and of an estate for life only, if she have issue, remainder in fee to the issue. And the said Lusina having no children at the time the deed was made, the remainder to her issue was then contingent. But children having been born to her, the contingency happened and the contingent remainder became a vested remainder. We are unable to see any facts in this case which would or could render the case obnoxious to the rule against perpetuities. A contingent remainder based upon a vested life estate, which was the fact in the Tindall Case, has always been held valid, and never held of itself to impugn the rule against perpetuities.

The case of Rodney v. Landau, 104 Mo. l. c. 257, is almost on all-fours with the Tindall Case. That case does not support the contention made in this case by counsel for respondent. The same is true of the case of Chew v. Keller, 100 Mo. 362. This case simply announces the old familiar rule that the vested or contingent character of a remainder is determined, not by the uncertainty of enjoying the possession, but by the uncertainty of the vesting of the estate in the devisee or grantee. The same ruling was made in the case of Waddell v. Waddell, 99 Mo. 338, l. c. 343.

Having shown that the decisions just reviewed do not support the contention made for them by counsel for respondent, in answer to the first contention advanced by counsel for appellant, under paragraph 2 of this opinion, we will now return to that contention and determine the legal effect thereof.

Regarding that language, it is plain and unambiguous, and reads as follows: "And no right or title to said income or other provisions for any such beneficiary shall vest in him or her until the same shall have been actually paid into his or her hands." This language found in the sixth paragraph of the will should be read in connection with the remainder thereof, and when so read in the light of what the testatrix was trying to accomplish by that paragraph, it is clear that she was trying to create

a spend-thrift trust in favor of her daughter and her grandchildren, by exempting the property, both the corpus and the income therefrom, from their debts and liabilities, and to withhold their power of disposing of the same, which in law could only be done by preventing the title in and to the property from vesting in the legatees. To foreclose all doubt upon that subject she clinched the matter by adding that their right and title to the property should not vest in any of them until the same had actually been placed into their hands. This shows that it was not her purpose in using that language to fix the time when they could enjoy the property, but the time when the title thereto should vest in them, and thereby withhold their power of alienation, and exempt it from seizure and sale under execution in satisfaction of their debts or other obligations. [Brooks v. Brooks, 187 Mo. 476.]

That being true then the question naturally presents itself, when under the will was the property required to be delivered or payable to the legatees? This question is answered by the last clause of paragraph four of the will, which provides that when each of the grandchildren shall arrive at the age of thirty-five years, he should receive free from the trust one-half of his share of the *corpus* of the property, and the other half when he should reach the age of forty years.

This court in a number of cases has held that where a testator or grantor has specifically provided (as is true in the will now before us) that the right or title should not vest until a particular time, the instruments conveyed only a contingent interest or title until that time arrived. [Buxton v. Kroeger, 219 Mo. 224, 1. c. 244-245.]

And where the question of remoteness arises, such instruments have been held void as being in violation of the rule against perpetuities.

In the case of Emison v. Whittlesay, 55 Mo. 254, a conveyance was made to A in trust for the sole and separate use of B, a married woman, during her natural life, and upon her death the remainder in fee simple to vest in the children of said B, then living, and her husband,

and the children of any of their children who should die before her death. The court held that at the time of making the deed, no one could tell whether or not any of the children would survive the mother, and therefore the remainder was a contingent one, and not a vested remainder. The same rule has been announced in the following cases: [Bennett v. Bennett, 217 Ill. 434; Battie-Wightson v. Thomas, 2 L. R. Ch. Div. (1904) 95; Rowland v. Tawney, 26 Beavan, 67; In re Morse's Settlement, 21 Beavan, 174; Comport v. Austen, 12 Simons, 218; Griffith v. Blunt, 4 Beavan, 248.]

In the light of these authorities we are driven to the conclusion that the testratrix by this will had a well settled purpose in her mind to keep the property in the family, and withhold the title and control of one-half of same from legatees until the expiration of the thirty-five-year period, and the other half until the expiration of the forty years mentioned in the last clause of paragraph four of the will.

In my opinion what has just been stated regarding the vesting of the main body of the estate in the legatees, should not apply to the $10,000 bequeathed to each of the grandsons, in the next to the last clause of paragraph four of the will. I think it is clear that a present vested interest in the money there mentioned was given to each of the three grandsons named in the will, and its enjoyment only depended upon satisfying the trustee that they were capable of succeeding in business.

But whether that was true or not, it is immaterial in this case, for that part of the trust has been decided against the three grandsons in the Circuit Court of St. Louis. But had that question been raised in connection with the questions now under consideration, quite a different proposition might have been presented in that regard. For in that case the question would be whether or not those gifts were separate and independent of the general plan and scheme of the trust, or whether they were parts and parcels thereof, and would have to stand in face of the entire trust.

Counsel for appellant have with great labor and pains cited us to many more authorities showing that the interest of the Loud children did not vest upon the death of the testatrix, among which are the following: Deacon v. Trust Co., 271 Mo. 669; O'Hare v. Johnston, 113 N. E. (Ill.) 127; Leake v. Robinson, 2 Mer. 363, 35 Eng. Rep. 979; Kates v. Walker, 82 Atl. (N. J.) 301; Schuknecht v. Schultz, 212 Ill. 43; Pitzel v. Schneider, 216 Ill. 87; In re Kountz's Estate, 62 Atl. (Pa.) 1103; Hewitt v. Green, 77 Atl. (N. J.) 25; Taylor v. Crosson, 98 Atl. (Del.) 375; Geissler v. Reading Trust Co., 101 Atl. (Pa.) 797; Dime Savings & Trust Co. v. Watson, 254 Ill. 419; Gates v. Seibert, 157 Mo. 254, 1 c. 268; Bradford v. Blossom, 207 Mo. 177.

We have examined these authorities and find them to announce the same rules as those heretofore announced and we can see no good reason for prolonging this opinion by separately reviewing them here.

It is natural to inquire what, if the equitable estate in fee did not vest in the grandchildren at the time of the death of the executrix, and not before the expiration of the thirty-five and forty year periods heretofore mentioned, then where was it between the expiration of the life estate, 1914, the time of the death of the testatrix, and the expiration of the said thirty-five and forty year periods? That question was answered by this court in the case of Buxton v. Kroeger, 219 Mo. 256:

"It is a sufficient answer to that inquiry to say that under the provisions of Section 4596, Revised Statutes 1899, it was not necessary that there should be any estate created between the end of the life estate and the vesting of the estate in remainder. It was expressly ruled by this court in O'Day v. Meadows, 194 Mo. 588, that an estate may be created by deed to commence in the future without any intervening estate to support the same. But aside from all this, in our opinion, under the provisions of this deed the legal title to the real estate embraced in such deed was vested in the trustee, and he held the same until the period fixed for the termination of the trust, which was ten years after the youngest child reached its majority."

III. We now come to a more serious question for consideration. The record shows that Mrs. Blanke, the testatrix, died May 12, 1914, at which date the will took effect, and from that date we must calcu-late the duration of the time from the date the will took effect, May 12, 1914, when the *corpus* of the estate was tied up in the grandchildren and great grandchildren of the testatrix.

*Unborn Child.*

In the fourth paragraph of the will, we find this clause: "If any other child shall be born to my said daughter, he or she, as the case may be, shall be treated under this provision of my will in the same manner as the other three grandchildren above mentioned and be entitled to the same share of the income and, ultimately, to the same share of the principal of the trust estate as the latter."

I construe this clause to mean that the testatrix undertook to and did completely give to the unborn chil- dren of Mrs. Loud, the same interest and estate in and to the trust property that she had given to the three living grandchildren, and subject to the same terms and conditions. This is the plain and unambiguous meaning of that clause.

And the first clause of paragraph five of the will reads: "If any of my grandchildren before receiving all of his share of the principal of said trust estate shall die leaving issue then surviving, the share of such deceased grandchild shall be held by said trustee for the benefit of such issue, in equal shares, until they, respectively, shall reach the age of twenty-one years, when their respective shares of the principal shall be paid over to them outright."

Now by reading the last two clauses of the will just copied, together, we find that one-half of the interests or estates of the three named grandchildren was tied up without the title vesting from May 12, 1914, the date of the death of the testatrix, until each of them should reach the age of thirty-five years, and the other one-half, until each of them should reach forty years of age. This means that Archibald's one-half share was tied up nine years and the other one-half for fourteen years; that

one-half of Harold's share was tied up for eleven years and the other half for sixteen years; and one-half of August's share was tied up for seventeen years, and the other half for twenty-two years after the death of the testatrix.

In addition to this calculation we must consider the first clause of the will last copied, and in this connection we find that an unborn child of Mrs. Loud is mentioned as a beneficiary in the will, and had it been born the day before the death of its grandmother, then one-half of its estate would have been tied up fifty-six years and the other for sixty-one years.

And since the issue of that unborn child of Mrs. Loud was named as a legatee of Mrs. Blanke, the testatrix, in the will, as a beneficiary thereunder, we must consider the probable time that would elapse between the time that the son or daughter of the said unborn son or daughter of Mrs. Loud would marry and give birth to a son or daughter, all taking the usual time for the marriage of an infant from time of birth, which according to my observation is about twenty years, and then allow the twenty-one years and ten months after the marriage to disqualify the issue thereof from accepting the bequest of the trust devised to him, we would have required practically forty-two years. If this period be added to the periods before mentioned, we would find that this estate in so far as the remotest grant is concerned, would cover a period of about one hundred and three years before the youngest probable, if not the youngest possible, great-grandchild of Mrs. Blanke could become vested with all of the trust estate created by the will of Mrs. Blanke in its favor.

I refer a little more in detail to these figures than I would otherwise have done, for two reasons, (1) simply for the purpose of showing how this estate is complicated, and for what a great period of time it is tied up, if this will is to stand, and thereby show the wisdom of the rule against perpetuities; and (2) to form the basis of an argument to show that the trust created by this will

clearly and beyond cavil, offends against the rule of perpetuities.

By the first clause of paragraph four before quoted, the unborn children of Mrs. Loud must be considered and reckoned with, in the same sense and way that we treated and dealt with the three born grandchildren named in the will, and by the first clause of paragraph five of the will it is provided that if any of the testatrix's grandchildren, which of course includes unborn, as well as living grandchildren, should die, etc., leaving issue, then they should receive their parent's share of the trust estate in equal parts; consequently we would have a case where the unborn child of an unborn child might take under the will in question, an interest in and to the trust estate created thereby. This is so obviously a violation of the rule against perpetuities that it is only necessary to copy what this court said upon the subject in the case of Shepperd v. Fisher, 206 Mo. at page 238:

"Mr. Washburn lays down the rule of law against perpetuities in the following language: 'Still the policy of the law is against clogging the free alienation of estates, and, as will be shown hereafter, it has become an imperative, unyielding rule of law, first, that no estate can be given to the unborn child of an unborn child; and second, that lands cannot be limited in any mode so as to be locked up from alienation beyond the period of a life or lives in being and twenty-one years after, allowing the period of gestation in addition, of a child *en ventre sa mere,* who is to take under such a limitation.' [1 Washburn on Real Prop. (4 Ed.) p. 110, sec. 57.]

"Sherwood, J., quotes, with approval, the foregoing language of Mr. Washburn in the case of Lockridge v. Mace, 109 Mo. l. c. 166. In discussing this same question another eminent authority says: 'Perpetuities are grants of property, where the vesting of an estate or interest is unlawfully postponed; and they are called perpetuities, not because the grant, as written, would make them perpetual, but because they transgress the limits which the law has set in restraint of grants that

tend to a perpetual suspense of the title, or of its vesting; or, as is sometimes, with less accuracy, expressed, to a perpetual prevention of alienation. It is any limitation tending to take the subject of it out of commerce for a longer period than a life or lives in being, and twenty-one years. beyond; and in case of a posthumous child, a few months more, allowing for the term of gestation; or it is such a limitation of property as renders it unalienable beyond the period allowed by law. The particular feature in limitations of future interests, with which the rule against perpetuitites is connected, is the time of their vesting or, in other words, of their becoming interests transmissible to the representatives of the grantee, devisee or legatee, and disposable by him.' [Rice on Modern Law Real Property, p. 755, sec. 270; Mifflin's Appeal, 212 Pa. St. p. 205.]

"Continuing, the same author, in the following section says: 'It was always easy to determine where an executory devise contravenes the rule against perpetuities by this single inquiry, viz: Is it possible that the event or contingency upon which the estate must vest, may not occur or happen within the prescribed period limited by the rule? For if, by any possibility, the event might not happen within the time, the devise is obnoxious to the rule, and hence invalid. In all instances, under all circumstances, the contingency upon which the vesting of the estate hinges must be of such a character that it will infallibly occur sometime within the limit,'

"Mr. Rice lays down the true test of a legality of such limitations in the following language: 'In the application of this rule, in order to test the legality of a limitation, it is not sufficient that it be capable of taking effect within prescribed period; it must be so framed as *ex necessitate* to take effect, if at all, within that time. If, therefore, a limitation is made to depend upon an event which may happen immediately after the death of the testator, but which may not occur until after the lapse of the prescribed period, the limitation is void. The object of the rule is to prevent any limitation which may

restrain the alienation of property beyond the precise period within which it must by law take effect. . . . The true test by which to ascertain whether a limitation over is void for remoteness, is very simple. It does not depend upon the character or nature of the contingency or event upon which it is to take effect. These may be varied to any extent. But it turns on the single question, whether the prescribed contingency or event may not arise until after the time allowed by law, within which the gift over must take effect.' [Rice on Modern Law of Real Property, p. 762, sec. 275.]

"The rule of law against perpetuities is not complicated nor difficult of understanding, but is like most rules of universal application—it is often found difficult in applying it to the facts of a particular case. But if the object of the rule is constantly borne in mind, and the kind of interests or estates which come under its operation, the proper application of the rule is very much simplified. The object of the rule, as before stated, is to leave the alienation or circulation of property free from all entanglements and other obstructions, so that it will freely pass and circulate in the channels of commerce, and the kind of the estates to which the rule applies are contingent remainders, conditional limitations, executory devises and springing and shifting uses. These interests or estates at common law were inalienable, because of their contingent nature. [2 Washburn on Real Prop. (4 Ed.) p. 591, sec. 6.]

"Such estates withdrew the landed property from the ordinary channels of commerce, its disposal and acquisition was rendered difficult, its improvement was greatly retarded, the development of the country was stayed, and the capital of the country was gradually withdrawn from trade and circulation. In order to escape from that condition of things, the courts originated and developed and put in force the rule against perpetuities. It is a pure and simple judge-made law of extensive application, and in force in one form or another in every civilized nation on the globe, and stands in-

exorably against all efforts tending to impede or clog the devolution and free circulation of property in the channels of commerce.

"In the absence of statutes to the contrary, this rule never applies to vested remainders, because at common law they were always alienable, and for that reason they never fall under the bane of the courts, or the displeasure of the lawmakers, except in recent years a few of the states have enacted statutes prohibiting the sale of vested remainders. In the states where those statutes exist, of course, the rule of perpetuities applies with equal reason and force to vested as it does to contingent remainders. [Rice on Modern Law of Real Property, pp. 755 to 764, secs. 270 to 276; Gray on Rule Against Perpetuities, p. 167, sec. 205; Washburn on Real Property (4 Ed.) p. 705, sec. 4.]"

And as I take it, some jest has been made of the contention that there might be an unborn child of an unborn child who might take an interest in the trust estate under the will in controversy. That jest or suggestion, whichever it may be considered, can best be answered by what this court said on the same suggestion in the case of Shepperd v. Fisher, 206 Mo. 208, at page 243: "Such births are not only possible but highly probable; in fact, such a child has been born unto Susan Ellen Shepperd since the death of the testator. It is thus seen that the estate under the fifth clause of the will may not vest until the birth of an unborn child of an unborn child; and that under the sixth paragraph it cannot vest in fee in the child born since the death of the testator unto the said Susan Ellen Shepperd until it also has issue born, which will be beyond the allotted time prescribed by the rule, because such issue would be the unborn issue of the unborn bodily heirs of said Susan Ellen Shepperd. [1 Washburn on Real Property (4 Ed.) p. 110, sec. 57; Rice on Modern Law of Real Property, pp. 761, 762, sec. 274; Lockridge v. Mace, 109 Mo. l. c. 166.]"

The fact that no child was born unto the grantors in the deed in question does not change the legal effect

of the deed, for the reason that if it is possible for an unborn child of an unborn child to take under the deed, it is just as void as if such child had in fact been born, as was the fact in the Sheppard Case.

The same question was presented to this court in the case of Bradford v. Blossom, 190 Mo. 110. The opinion in that case was written by BURGESS, J., and the court there held that a will which offended against the rule against perpetuities was void.

The same case came before the Court in Banc, and by a unanimous court the same doctrine was again announced therein. [Bradford v. Blossom, 207 Mo. 177.] Also to the same effect see: Heald v. Heald, 56 Md. 300; Donohue v. McNichol, 61 Pa. St. 73; Barnum v. Barnum, 26 Md. 119; Gray on Perpetuities (2 Ed.) secs. 369 to 382; Coggin's Appeal, 10 Am. St. 569; In re Wakerly, 49 Am. St. 136-7.

In fact all of the text-writers and adjudications of this country and of England enunciate the rule to be as stated in the case of Shepperd v. Fisher, supra; and I have been unable to find a single authority holding to the contrary on either side of the waters.

I am, therefore, clearly of the opinion that the will in question is absolutely void upon its face, and that it conveyed no title whatever to any one.

IV.  Counsel for appellant next insist that plaintiff is not estopped from bringing this action, by reason of her having accepted a portion of the income, which was only a small part of the property belonging to her, which Estoppel. in no manner prejudiced the interest of the Trust Company. This exact point was decided by this court in favor of the plaintiff in the case of Egger v. Egger, 225 Mo. 116. See also In re Schaefer's Estate, 180 N. Y. Supp. 638; Carrier v. Carrier, 123 N. E. (N. Y.) 135.

In our opinion the cases decided by the Circuit Court of the City of St. Louis some years ago construing that clause of the will denying each of the three grandchildren $10,000 between the age of twenty-five and thirty-five years, if in the opinion of the trustee it would be wise

to so do, is not *res adjudicata* in this case for the reason stated on that view of the case in paragrah two of his case.

Besides the law is well settled that a judgment or decree is only conclusive and operated as an estoppel as to the issues actually litigated and settled, and where the subsequent action is upon a different claim, the judgment in the former case is only conclusive and only bars those issues which were actually tried. [Garland v. Smith, 164 Mo. 1, l. c. 22; La Rue v. Kempf, 171 S. W. 588, l. c. 592.]

V. We have repeatedly held that where portions of a will are void as being in contravention with the rule against perpetuities, and as those portions relate to the same property and constitute a part of a general plan of **Entirely Void.** disposition, the valid, as well as the invalid, portions will fall together. [Lockridge v. Mace, 109 Mo. 162; Shepperd v. Fisher, 206 Mo. 208.]

VI. This is a very complicated case, and unquestionably a trust estate was created by the Blanke will, and it was but natural and proper for the trustee to employ counsel and have the record and briefs printed. If this was not permissible, then it might be with some difficulty that proper persons could be found who would act as trustee. I think the court properly allowed the trustee counsel fees, and cost of printing briefs, etc.

We have carefully considered all the points presented by counsel for the respective parties, and have either passed specifically upon each and all of them, or those we have passed upon have necessarily held all others untenable, and I therefore see no useful purpose in devoting more time to the consideration of the case.

The judgment of the circuit court is reversed and remanded with directions to enter a decree for the plaintiff as prayed, and to take an accounting and turn over the property to the plaintiff as prayed, and to pay the counsel for respondent reasonable counsel fees and costs for services rendered in the circuit court and this court, and all costs of the case. All concur; *James T. Blair, J.,* not sitting.